937 F.2d 553
 56 Fair Empl.Prac.Cas. 570,
56 Empl. Prac. Dec. P 40,841
Jess P. BINGMAN, Plaintiff-Appellee and Cross-Appellant,
v.
NATKIN & COMPANY, a Missouri corporation,
Defendant-Appellant and Cross-Appellee.
 Nos. 89-1114, 89-1122.
 United States Court of Appeals,
Tenth Circuit.
 June 28, 1991.
 
 1
 Curtis V. Smith, Leo Gemma, Jr. & Associates, P.C., Littleton, Colo., for plaintiff/appellant.
 
 
 2
 Donald B. Gentry, Grant, McHendrie, Haines & Crouse, P.C., Denver, Colo., for defendant/appellee.
 
 
 3
 Before HOLLOWAY, Chief Judge, BARRETT, Circuit Judge, and BROWN, Senior District Judge*.
 
 
 4
 WESLEY E. BROWN, Senior District Judge.
 
 
 5
 At age 60, plaintiff-appellant Jess Bingman was terminated from a job by his employer, appellee Natkin & Company. He filed this action to recover back pay, front pay, lost benefits, liquidated damages and injunctive relief for deprivation of rights under the provisions of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. Sec. 621 et seq. Following trial, a jury found that Bingman's age was a determinative factor in the defendant's decision to discharge him, and that Bingman sustained damages in the sum of $78,302.76 as a consequence of that action. In addition to these findings, the jury found that the defendant acted willfully in terminating Bingman's employment. Judgment was entered for plaintiff in the sum of $156,605.50, double the amount of the verdict, under the provisions of the Age Discrimination Act.
 
 
 6
 Defendant moved for a new trial contending that the verdict was against the weight of the evidence as to both the claim of age discrimination, and the willful violation, that defendant was denied a fair trial by admission of evidence concerning subsequent acts by defendant, and by admission of evidence contrary to stipulations, and that the damages assessed for a willful violation were excessive. Record Vol. I, Item 7.
 
 
 7
 The motion for new trial was denied March 24, 1989. Record Vol. I, Item 13.
 
 
 8
 No jury instruction was given on the issue of future damages in lieu of reinstatement, because the parties had stipulated that "after the jury verdict the Court would then decide whether it's appropriate to have the remedy (of) reinstatement or some remedy of money damages in lieu of reinstatement."[1] On April 19, 1989, following an evidentiary hearing on this issue, the trial court denied "front pay," and ordered that plaintiff be reinstated to his former position.
 
 
 9
 Defendant Natkin & Company has appealed upon the assertion that the jury verdict for plaintiff was against the weight of the evidence and was unsupported by the evidence, and that the trial court erred in admitting evidence of other acts by defendant, which occurred after Bingman had been terminated. Defendant also contends that the motion for future damages and relief should have been denied.
 
 
 10
 Plaintiff has filed a cross-appeal, contending that the district court erred in ordering reinstatement instead of awarding him future damages. In this respect, plaintiff alleges that the court erred in failing to consider factors other than "work place hostility" in determining whether front pay or reinstatement would be the appropriate remedy.
 
 
 11
 "A motion for a new trial made on the ground that the verdict of the jury is against the weight of the evidence normally presents a question of fact and not of law and is addressed to the discretion of the trial court ... On review, the trial court's decision to deny a motion for new trial will stand absent a showing of a manifest abuse of discretion ... Our inquiry focuses on whether the verdict is 'clearly, decidedly, or overwhelmingly' against the weight of the evidence ..." Richardson v. City of Albuquerque, 857 F.2d 727, at 730 (10th Cir.1988).
 
 
 12
 Our review of the record establishes that the verdict of the jury was, and is, supported by substantial evidence, and is not against the weight of the evidence. Viewing the evidence in the light most favorable to the plaintiff,[2] the testimony and exhibits established the following factual situation:
 
 
 13
 The defendant Natkin and Company is a mechanical contractor engaged in new construction in Colorado, employing a large number of personnel engaged in various skilled crafts such as plumbers, pipe fitters and sheet metal workers who install the equipment necessary to heat and cool large commercial structures. Natkin is a union employer and has contracts with Plumbers Local No. 3, Pipefitters Local No. 208, and Sheet Metal Local No. 9. In addition to these men, Natkin also employed support personnel who worked in the "pipe shop", or warehouse, handling material, maintaining equipment and inventory, and delivering equipment and supplies to the various job sites. The pipe shop had four general areas of work--warehousing, driving, yard or forklift operations, and hydro crane operations. These support people were represented by Teamsters Local No. 13.
 
 
 14
 During WWII, plaintiff served in the Navy Seabees, a construction battalion, and thereafter worked as an "over the road" long haul truck driver for 20 years. In 1972, at age 47, he was hired as a truck driver by Natkin and worked for defendant until he was terminated at age 60 in January, 1986. After driving a truck for defendant for several years, plaintiff switched to operating a hydro crane, which was mounted on a truck, with a lifting capacity of about 4,000 pounds. With this unit, he went around job sites delivering and unloading equipment and supplies for 3 or 4 years. He then transferred to work as a forklift operator inside the pipe shop, where he also checked supplies and parts in and out and otherwise did whatever there was to be done in the way of yard maintenance, or warehousing at the shop. During the 7 years preceding his termination, plaintiff's primary job was that of forklift operator. At the time he was terminated, he worked with the forklift about 50% of the time, and worked the remaining time in yard maintenance, or as needed around the area. From the evidence, the jury was entitled to find that despite "titles," all employees in plaintiff's unit performed whatever needed to be done in the operation.
 
 
 15
 As a result of a decline in construction projects, Natkin laid off 350 field workers during 1985. It was also determined that three men would have to be laid off in the support operation--two of them from the "mechanical side" of the warehouse where plaintiff worked, and one from the "sheet metal side". It was determined that plaintiff and Melvin Mitchell, a truck driver, would be terminated on the mechanical side, and that Oswat, a forklift operator, would be the one to go on the sheet metal side.
 
 
 16
 It was stipulated by the parties that Natkin had an economic need to reduce its support force on January 9, 1986, by three people. It was also stipulated that two of the three employees terminated were in the protected age group, and that no employees under the age of 40 years were terminated in the reduction in force which affected plaintiff.
 
 
 17
 Although there was no formal seniority clause in the contract with the Teamsters, there was evidence from which the jury could find that employment decisions took seniority into account, and plaintiff testified that he was told, prior to termination, that the proposed layoffs were to be based upon seniority. With the exception of the supervisor, Parsons, all those remaining on the job after plaintiff was terminated had less seniority than he did and, from the evidence, the jury could find that those who kept their jobs had less experience in driving trucks and operating a crane or forklift.[3]
 
 
 18
 This evidence was disputed. Defendant's witnesses testified that there was no seniority policy clause in the union contract; that a "best-qualified" policy was used only when making choices between persons performing the same duties, that this policy was not used because plaintiff's job was being eliminated, and that others in the work force simply took over the few "forklift" duties that came up after plaintiff was terminated. Defendant's witnesses testified that forklift work within the warehouse was minimal, that most of plaintiff's work was "yard maintenance," and that his job was in fact eliminated but, under all of the evidence, the jury could find that in fact it was not, and that plaintiff's job had been taken over and assumed by younger men with less seniority, thereby justifying the inferential finding that plaintiff lost his job because of prohibited age discrimination.
 
 
 19
 Defendant objected to the admission of evidence that the two 60-year-old employees who were kept on when plaintiff was terminated, were laid off by defendant about a year later. Defendant suggests that this evidence was irrelevant and, even if relevant, the evidence should have been excluded under Federal Rule of Evidence 403 as prejudicial. Defendant further complains that the parties had stipulated that 60-year-old employees remained in the unit after plaintiff was laid off, and the admission of the evidence denied defendant a fair trial because defendant relied upon the stipulation.
 
 
 20
 Gary Parsons, who was Bingman's foreman, was called as a witness for plaintiff, and questioned about shop personnel after plaintiff was terminated. In this examination, Parsons testified that employees Sundine, Smith and Olson, ages 34, 32, and 34, were still employed, but that Lopez, age 60, lost his job at the next reduction in force which occurred about one year after Bingman lost his job. This evidence was received over defendant's objection that circumstances were different at that later time. The court ruled that the Lopez termination was close enough in time to be evidence of defendant's practice in terminating older employees. Record, Volume III, pp. 161-162. There was also evidence that another employee, Welch, age 60, was also terminated in a reduction in force. Vol. III, pp. 191-192.
 
 
 21
 In this action, plaintiff claimed that defendant terminated him because of his age, under the guise of a reduction in force, and in opposition to defendant's usual policy which recognized seniority as an element of termination decisions. In order to establish his claim, he was required to prove by a preponderance of the evidence that his position was filled by a younger employee or that his job continued to exist in its various parts. Record Vol. V, pp. 298-299. See Spulak v. K Mart Corp., 894 F.2d 1150, 1153-1154 (10th Cir.1990). In this respect, evidence concerning the make-up of the employment force and events which occurred after plaintiff's termination were entirely relevant to the question of whether or not age was one of the determinative reasons for plaintiff's termination; and, as the trial court found, evidence not too remote in time that defendant terminated others in the 60-year-old age group would be entirely relevant to the question of defendant's policies and practices.
 
 
 22
 Defendant claims that the admission of such evidence was unduly prejudicial and that it was subjected to unfair "surprise" because of the prior stipulation that employees age 60 were retained in the work force at the time plaintiff was terminated.[4] Plaintiff's evidence of the subsequent terminations in no way contradicted the terms of this stipulation. Defendant had an opportunity to present evidence and explain the later terminations and did present testimony that Welch, an assistant mechanic, did not have the same qualifications as Cole, the head mechanic, who was retained. In addition, defense counsel in his jury argument, relied on plaintiff's own evidence that Lopez was really not a highly qualified worker, arguing that "you already have in front of you from that source of the evidence the fact certainly there were good reasons why Mr. Lopez is the person who is next laid off." Record, Vol. 5, p. 334.
 
 
 23
 There was no abuse of discretion in the admission of evidence of defendant's subsequent termination of two employees, age 60.[5] The jury was entitled to judge the credibility of the witnesses, to resolve conflicts of evidence in plaintiff's favor, and to find that plaintiff's age was a determinative factor in defendant's decision to terminate his employment.
 
 
 24
 Judgment was entered on the jury verdict on January 13, 1989, and on February 3, plaintiff filed a motion for assessment of future damages in the amount of $273,139.00, representing future pay losses.[6] Following an evidentiary hearing, the trial court found that plaintiff should be reinstated to his former position in lieu of the money damages which he claimed.
 
 
 25
 In this appeal, defendant alleges that the motion for assessment of future damages should have been denied as being untimely and that plaintiff should have been denied additional relief by way of reinstatement since the post-trial motion was not filed within the 10 days provided by Rule 59, Federal Rules of Civil Procedure.[7] The trial court rejected defendant's contention that the claim for future damages was untimely upon the basis that the parties had stipulated that the trial "would, in effect, be bifurcated, and that the liability aspects (of the case) would be tried first, with the general damages ... and that other matters (would) be tried later." Record Vol. VI, p. 7. In this respect, the district court found that the issue of reinstatement/future damages was simply a continuation of the trial on liability:
 
 
 26
 In essence, what we did is subject to, pursuant to the stipulation of counsel on both sides, bifurcated, or, you might say, trifurcated this trial if you count attorney's fees as a separate segments (sic), with the understanding we were going to finish the trial at a later time, that later time was set in February, I believe, which was a short time after the trial, and was continued to this date, and that's where we are now, and, as far as I'm concerned, we are just finishing the trial today. (Record, Vol. VI, p. 9).
 
 
 27
 Defendant contends that its stipulation did not waive the application of procedural rules applicable to post-judgment motions, and that it was error to accept additional evidence concerning future losses. We find such argument without merit--the issue of future losses was always a part of plaintiff's case--and it was agreed by the parties that this was a matter to be resolved by the court after the jury had determined liability.
 
 
 28
 Plaintiff has appealed from the court's finding that reinstatement would be the remedy in this case, claiming that front pay would be a more appropriate award. In choosing reinstatement, the trial court reviewed the testimony and exhibits of plaintiff and his experts, Dr. James Evenson and Robert M. Woodard. Plaintiff testified that he was physically able to return to work and that he wanted to work to at least age 70, but he had misgivings about how he would be received if he returned to work, particularly expressing some concern that if he returned someone else would lose his job. All of the evidence established that plaintiff had good relations with his supervisors and fellow workers at the pipe shop and had in fact returned for visits after he was terminated. The trial court also considered that defendant was well established in the construction industry, with a large number of employees, and was then involved in projects requiring the need for employees in the pipe shop. The evidence during trial also established that defendant had been flexible in employee relations in the past, retaining employees when work was slow by reducing their hours or shifting their jobs about, and that the union contracts contained no provisions which would inhibit defendant from returning plaintiff to his former job. The trial court specifically found that there was insufficient evidence to conclude that defendant could not or would not take appropriate measures to reinstate plaintiff, or to find that the work place would be unduly hostile to his return, for the court observed that at trial all persons involved in plaintiff's termination testified, and none showed animosity toward him because of this lawsuit.
 
 
 29
 The award of equitable relief by way of reinstatement rests in the discretion of the trial court and this determination will not be set aside unless we are satisfied that it is clearly erroneous. See E.E.O.C. v. General Lines, Inc. 865 F.2d 1555 (10th Cir.1989).
 
 
 30
 This circuit has frequently held that reinstatement is the preferred remedy for discrimination in employment matters in all but special instances of unusual work place hostility or other aggravating circumstances which may make reinstatement impossible. Such situations were discussed at length in Anderson v. Phillips Petroleum, 861 F.2d 631 (10th Cir.1988) and, more recently, in Jackson v. City of Albuquerque, 890 F.2d 225 (10th Cir.1989). In Anderson, where reinstatement was found to be the appropriate remedy, this court noted some few instances where reinstatement would not be beneficial--such as the existence of "extreme hostility" in the work place, instances where no comparable job was available, or when the time period for an award of front pay was very short. In Jackson, a case involving racial discrimination in city employment, the trial court awarded front pay instead of reinstatement upon a finding that general hostility in the work place remained "impossibly high." That decision was reversed because all of the hostility was one-sided and evidenced by the individual defendants and their supporters in the city government who, "were determined to run plaintiff Carl Jackson off the job." As we observed in that case, if reinstatement were denied, then the defendants would have accomplished their purpose.[8]
 
 
 31
 In this appeal, plaintiff Bingman alleges that the trial court erred in "not considering" factors other than work place hostility, but the findings and conclusions of the court, as discussed above, clearly reflect that this was not the case. The order of reinstatement is supported by the evidence, and not clearly erroneous.
 
 
 32
 There being no error, the judgment and reinstatement order are AFFIRMED.
 
 
 
 *
 The Honorable Wesley E. Brown, United States Senior District Judge for the District of Kansas, sitting by designation
 
 
 [1]
 During a third conference on jury instructions, the court inquired into a stipulation concerning future damages:
 .... it's my understanding that counsel now wish to stipulate that in lieu of giving the jury any instructions regarding a monetary amount, which would be present value of any wages and benefits the plaintiff would have earned had he not been terminated for the future period beyond the verdict until age 71, in lieu of any reinstatement the Court might order in an equitable remedy, that counsel would prefer to simply have the Court handle all those matters separately after the jury verdict. That is, after the jury verdict the Court then would decide whether it's appropriate to have the remedy reinstatement or some remedy of money damages in lieu of reinstatement and that counsel wish to brief that issue and argue it. Is that the stipulation as you understand it? (Vol IV, p. 2)
 
 
 [2]
 Jackson v. City of Albuquerque, 890 F.2d 225, 226, 231 (10 Cir.1989)
 
 
 [3]
 The people left in the unit after plaintiff's layoff were Lopez, a driver, age 60, with less seniority than plaintiff; Smith, a driver, age 32, with 10 years less seniority, Olsen, the second in command who did tool repair, age 34, with 4 years less seniority, and Sundine, age 34, with 9 years less seniority, listed as a truck driver, forklift, and warehouse man who, according to defendant, was an "inside" and not an "outside" yard man
 
 
 [4]
 As noted, the Stipulation, as presented to the jury was that of the three employees terminated on January 9, 1986, all were between the ages of 40 and 70, that no employee under the age of 40 was terminated, and that following that, "only two employees in Bingman's unit were aged 60 or older." Record Vol. V, p. 294
 
 
 [5]
 There was also evidence that a Rick Hughes, age 35 to 40, transferred over to the pipe shop from the "sheet metal side", sometime after Bingman was terminated. Record Vol. V, p. 353
 
 
 [6]
 Plaintiff requested that this figure be doubled, thereby yielding $702,883.52, for a total judgment of $702,883.52, plus costs and attorney fees. Record, Vol. I, Item 8
 
 
 [7]
 Rule 59(b) and 59(e) provide that motions for new trial, or motions to alter or amend a judgment, must be served not later than 10 days after the entry of judgment. Defendant contends that plaintiff's motion for assessment of future damages sought to increase the jury verdict or to add a remedy, thereby challenging the correctness of the Judgment entered January 12, 1989
 
 
 [8]
 In Marshall v. TRW, Inc., Reda Pump Div., 900 F.2d 1517 (10 Cir.1990), involving a claim for retaliatory discharge under state law, a jury awarded future damages due to hostility in the workplace. This judgment was reversed upon a finding that state law provided for reinstatement, and that, as in Jackson, supra, there was insufficient evidence of hostility to support such an award