**PUBLISH**

**IN THE UNITED STATES COURT OF APPEALS**

**Filed 10/15/96**

**FOR THE TENTH CIRCUIT**

---

ROBERT D. GREENE, )
                                   )
         Plaintiff-Appellant, )
                                   )
v.                                    )      No. 95-1122
                                   )
SAFEWAY STORES, INC., )
                                   )
         Defendant-Appellee. )

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 94-N-691)**

---

Elizabeth C. Moran of Pryor, Carney and Johnson, P.C., Englewood, Colorado (Thomas L. Roberts, Greenwood Village, Colorado, and JoAnne M. Zboyan and Kimberly B. Turnbow of Pryor, Carney and Johnson, P.C., Englewood, Colorado, with her on the brief), for Plaintiff-Appellant.

Gregory A. Eurich (David D. Powell and Fiona W. Ong with him on the brief), of Holland & Hart, Denver, Colorado, for Defendant-Appellee.

---

Before **TACHA, HOLLOWAY**, and **BRISCOE**, Circuit Judges.

---

**HOLLOWAY,** Circuit Judge.

Plaintiff-Appellant Robert D. Greene appeals from a judgment of the district court granting Defendant-Appellee Safeway Stores, Inc. judgment as a matter of law under Fed. R. Civ. P. 50(a) at the close of Greene's case at trial on his claim under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, et seq. We have jurisdiction under 28 U.S.C. § 1291 and reverse and remand for a new trial.

I

Considering the evidence in the light most favorable to plaintiff Greene, as we must due to the posture of this appeal, there is evidence tending to show the following facts:

Greene went to work at Safeway as a courtesy clerk in 1957 in McCook, Nebraska while still in high school. He moved to Denver in 1960 and in 1961 became a produce manager at a Safeway store. I Aplt. App. at 264-65. In 1967, at the age of 26 he became a store manager, the youngest manager in Safeway's Denver Division. In 1975 he became a retail operations manager in Little Rock, Arkansas. Two years later he came back to Denver as retail operations manager. Less than five years later, Greene became a marketing operations manager in Houston. Id. at 267-68. In 1986 Greene became division manager for the Denver Division of Safeway, a position he held for a little over seven years. Aple. App. at 208.

Around this time, Safeway began encountering some financial difficulties. The profit levels in 1986 were discouraging and there was concern then about a hostile takeover attempt. Id. at 364. A leveraged buyout, which was worked on with Kohlberg, Kravis &

Roberts, was completed in November 1986. Id. at 366-68. After a long family association with Safeway, Mr. Peter Magowan resigned as Chief Executive Officer in March 1993 at 51 years of age, having already stepped down as President in October 1992. I Aplt. App. at 341. In October 1992, Mr. Steve Burd became President of Safeway at 42 years of age. I Aplt. App. at 151.

In an inter-office communication to Greene dated April 6, 1993, Bob Kinnie, Greene's immediate supervisor and Safeway's Chief Operating Officer, congratulated Greene and the "'Denver team' for the fine results reported for the third period and for the first quarter of 1993!" II Aplt. App. at 459 (emphasis in original). The Denver Division met and exceeded numerous performance measures of its 1993 business plan in January-June 1993, although "same store sales" -- sales in stores at least one-year old -- declined in the first quarter of 1993 compared to the first quarter of 1992. I Aplt. App. at 390-95; id. at 253-55. Mr. Burd was questioned at trial about Safeway "town meetings" on cost-cuttings. At these meetings he said he was "enthusiastic" about the Denver experience, and he admitted he did "tout" the Denver experience in the town meetings on November 16 and 17, 1992. I Aplt. App. at 156-57.[1]

On June 10, 1993, Greene was called to an evening meeting at Mr. Burd's hotel room in Denver. Also present at that meeting was Mr. Ken Oder, an attorney who had recently

---

[1] While the trial record gives these dates as November 16 and 17, 1993, a printed memorandum in our record shows that these dates were actually November 16 and 17, 1992. II Aplt. App. at 622.

joined Safeway as an executive vice president. I Aplt. App. at 225-27. At the meeting, Burd fired Greene.

Burd said to Greene: "Bob, you've done a good job turning the division around, you've done a good job and people respect you and like you in the stores, but I -- I want to move forward with my new team and I just don't have a place for you on the new team." Id. at 228. At that time Greene was 52 years of age (his birth date being November 7, 1940, I Aplt. App. at 224) and 28 months away from vesting in a supplemental executive pension plan (SESBP) in which vesting was based on reaching age 55. II Aplt. App. at 815F. Mr. Burd gave the following reasons for Greene's discharge: (1) Greene was a "poor merchandiser"; (2) his division had "plateaued out or had declining same store sales"; (3) Greene was "pessimistic" about Safeway's dealings with its big competitor, King Soopers; and (4) Greene intimidated his staff. Id. at 228-29. Greene was replaced by Mr. John King, a 57-year-old marketing operations manager from Safeway's Seattle Division. Mr. Burd testified that he told King at the time King was taking over the Denver Division that the SESBP plan would not be in place for him. I Aplt. App. at 706. King acknowledged that Burd told him "right up front" that King would not be eligible for that plan. Id. at 331. King told the first staff meeting he held after it was announced he would be the Denver division manager that he was as surprised as they were and that he was only going to be around "for a couple of years." King was going to retire in Seattle. Id. at 387-88.

Greene brought this suit in October 1994 alleging that Safeway fired him in violation

of the ADEA, § 510 of the Employee Retirement Income Security Act (ERISA) (29 U.S.C. § 1140), and various state laws. His complaint alleged discriminatory treatment against him on the basis of his age contrary to the ADEA, inter alia. Aple. App. 0013-14. At the beginning of trial, Greene withdrew his state law claims and proceeded on the ADEA and ERISA claims only. At the close of Greene's case-in-chief, Safeway moved for judgment as a matter of law on both federal claims. The district court granted Safeway's motion as to Greene's ADEA claim, but denied it as to Greene's ERISA claim. Aple. App. 78-103.

The essence of the judge's oral ruling granting Safeway judgment as a matter of law on the ADEA claim was that, while under St. Mary's Honor Society v. Hicks, 509 U.S. 502 (1993), the McDonnell Douglas burden shifting approach in a sense had dropped from the case, it remained helpful in determining whether there was enough evidence to go to the jury, I Aplt. App. at 81; and that disbelief of a defendant's proffered reasons for a discharge would not, standing alone, support a finding of discrimination. Id. at 87. The judge stressed that the fourth element of a prima facie age discrimination case, "replacement by a younger worker, . . . remains problematic in this case." Id. at 98. This element was not shown here. While the burden shifting approach was not inflexible, there was not comparable evidence to fulfill that purpose here and the case foundered on this element. Id. at 98. After the trial was completed, the district judge entered judgment in favor of Safeway on the ERISA claim. Greene appeals only from the judgment in favor of Safeway on his ADEA claim.

On March 19, 1996, after this appeal had been argued and submitted, we abated this

5

proceeding on our own motion pending the decision of the Supreme Court in <u>O'Connor v. Consolidated Coin Caterers Corp.</u>, 116 S. Ct. 1307 (1996), which was decided on April 1, 1996. After the Court issued its opinion in <u>O'Connor</u>, we ordered the parties to file supplemental briefs addressing the applicability of <u>O'Connor</u> to the instant case. We have considered those briefs as well as the parties' arguments and previously submitted briefs. We conclude that the judgment of the district court, which denied submission of Greene's ADEA claim to the jury, must be reversed and that the case should be remanded for a new trial.

**II**

**A**

We review <u>de novo</u> the grant or denial of a judgment as a matter of law, <u>Corneveaux v. CUNA Mutual Ins. Group</u>, 76 F.3d 1498, 1502 (10th Cir. 1996), and apply the same legal standard as the district court and construe the evidence and inferences in the light most favorable to the nonmoving party without weighing the evidence, passing on the credibility of witnesses, or substituting our judgment for that of the jury. <u>Brown v. Wal-Mart Stores</u>, 11 F.3d 1559, 1563 (10th Cir. 1993). Judgment as a matter of law is appropriate "only where the evidence and all inferences to be drawn therefrom are so clear that reasonable minds could not differ on the conclusion." <u>Motive Parts Warehouse v. Facet Enterprises</u>, 774 F.2d 380, 385 (10th Cir. 1985). Unless the proof is all one way or so overwhelmingly preponderant in favor of the movant as to permit no other rational conclusion, <u>id.</u> at 386, judgment as a matter of law is improper.

6

## B

The ADEA provides in pertinent part that "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . ." 29 U.S.C. § 623(a)(1). The protective provisions of the ADEA, however, are "limited to individuals who are at least 40 years of age." 29 U.S.C. § 631(a). The ADEA thus "bans discrimination against employees because of their age, but limits the protected class to those who are 40 or older." O'Connor v. Consolidated Coin Caterers Corp., 116 S. Ct. at 1310. The promulgation of the ADEA was prompted by Congress' "concern that older workers were being deprived of employment on the basis of inaccurate and stigmatizing stereotypes." Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993). The Act commands that "employers are to evaluate [older] employees . . . on their merits and not their age." Id. at 611 (quoting Western Air Lines, Inc. v. Criswell, 472 U.S. 400, 422 (1985)). "The employer cannot rely on age as a proxy for an employee's remaining characteristics, such as productivity, but must instead focus on those factors directly." Hazen Paper, 507 U.S. at 611.

To prevail on an ADEA claim a plaintiff "must establish that age was a 'determining factor' in the employer's challenged decision." Lucas v. Dover, 857 F.2d 1397, 1400 (10th Cir. 1988) (quoting EEOC v. Sperry Corp., 852 F.2d 503, 507 (10th Cir. 1988)). The plaintiff "need not prove that age was the sole reason for the employer's acts, but must show

7

that age 'made the difference' in the employer's decision." EEOC v. Sperry Corp., 852 F.2d at 507 (quoting EEOC v. Prudential Fed. Sav. & Loan Ass'n, 763 F.2d 1166, 1170 (10th Cir.), cert. denied, 474 U.S. 946 (1985)) (emphasis in original). Under our precedents, an ADEA plaintiff may proceed by either of two general methods to carry the burden of making her or his case. A party "may attempt to 'meet his burden directly, by presenting direct or circumstantial evidence that age was a determining factor in his discharge.'" Lucas, 857 F.2d at 1400 (quoting La Montagne v. American Convenience Products, Inc., 750 F.2d 1405, 1409 (7th Cir. 1984)). Or, more typically, a party may rely on the proof scheme for a prima facie case established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-56 (1981). Lucas, 857 F.2d at 1400.

We turn now to consider whether under either or both of these two methods for carrying his burden, Greene has made a case which should have been presented to the jury, rather than having it taken from the jurors with the entry of judgment as a matter of law under Fed. R. Civ. P. 50(a).

**III**

We consider first the approach "more typically" pursued by an ADEA plaintiff, the prima facie proof scheme established in McDonnell Douglas and Burdine. Under McDonnell Douglas,

to set forth a prima facie case of age discrimination, a plaintiff must ordinarily

8

prove that "(1) the affected employee was within the protected age group;  (2) [he] was doing satisfactory work;  (3) [he] was discharged despite the adequacy of this work;  and (4) a younger person replaced [him.]"

Lucas, 857 F.2d at 1400 (quoting E.E.O.C. v. Sperry Corp., 852 F.2d at 507);  see also Cone v. Longmont United Hospital Ass'n, 14 F.3d 526, 529 (10th Cir. 1994);  and Denison v. Swaco Geolograph Co., 941 F.2d 1416, 1420 (10th Cir. 1991).

The establishment of a prima facie case "'in effect creates a presumption that the employer unlawfully discriminated against the employee.'"  St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993) (quoting Burdine, 450 U.S. at 254).  This presumption "places upon the defendant the burden of producing an explanation to rebut the prima facie case -- i.e., the burden of  'producing evidence' that the adverse employment actions were taken 'for a legitimate nondiscriminatory reason.'"  Id. at 506-07 (quoting Burdine, 450 U.S. at 254).  If the defendant meets that burden of production, the presumption created by the prima facie case is rebutted and drops from the case.  Id. at 507.  "The plaintiff then has 'the full and fair opportunity to demonstrate,' through presentation of his own case and through cross-examination of the defendant's witnesses, 'that the proffered reason was not the true reason for the employment decision,' [Burdine], at 256. . . ."  Id. at 507-08.  The Title VII plaintiff at all times bears the ultimate burden of persuasion.  Id. at 511.

It is undisputed that Greene (52) was replaced by an older worker, John King (57). Therefore, Safeway says that Greene did not establish a prima facie case under the McDonnell Douglas framework as applied under our precedents. E.g., Cone, 14 F.3d at 529;

9

but see Denison, 941 F.2d at 1420 (plaintiff "ordinarily" must prove inter alia, replacement by a younger person); and Lucas, 857 F.2d at 1400 (same). However, with respect to making an ADEA prima facie case, we now have supplemental briefs from the parties concerning the Court's recent opinion in O'Connor v. Consolidated Coin Caterers Corp., 116 S. Ct. 1307 (1996). In O'Connor, the Court rejected the Fourth Circuit's version of the McDonnell Douglas prima facie ADEA case, which required a plaintiff to show replacement by a worker outside the protected class (that is under 40 years of age).[2] The Court said:

> As the very name "prima facie case" suggests, there must be at least a logical connection between each element of the prima facie case and the illegal discrimination for which it establishes a "legally mandatory, rebuttable presumption," Burdine, supra, at 254, n. 7, 101 S. Ct., at 1094, n. 7. The element of replacement by someone under 40 fails this requirement. The discrimination prohibited by the ADEA is discrimination "because of [an] individual's age," 29 U.S.C. § 623(a)(1), though the prohibition is "limited to individuals who are at least 40 years of age," § 631(a). This language does not ban discrimination against employees because they are aged 40 or older; it bans discrimination against employees because of their age, but limits the protected class to those who are 40 or older. The fact that one person in the protected class has lost out to another person in the protected class is thus irrelevant, so long as he has lost out because of his age. Or to put the point more concretely, there can be no greater inference of age discrimination (as opposed to "40 or over" discrimination) when a 40 year-old is replaced by a 39 year-old than when a 56 year-old is replaced by a 40 year-old. Because it lacks probative value, the fact that an ADEA plaintiff was replaced by someone outside the protected class is not a proper element on the McDonnell Douglas prima facie case.

116 S. Ct. at 1310 (emphasis in original).

---

[2] In O'Connor the Court assumed, without deciding, that the McDonnell Douglas framework was applicable to ADEA cases. Id. at 1310.

10

We focus now on the positions taken by the parties in their supplemental briefs on the effect of O'Connor here. Plaintiff Greene argues that under O'Connor, it is irrelevant that he was replaced by the older man, King; that "it is clear that a plaintiff may demonstrate a prima facie case of age discrimination even when his replacement is older, as long as there is evidence to support an inference that the employment decision was based upon the plaintiff's age," which proof is present here. Plaintiff-Appellant's Supplemental Brief at 4, 6. Greene contends that whether this case is analyzed under the McDonnell Douglas formula, or by assessing the sufficiency of the evidence to support the ultimate inference of discrimination, here the evidence presented a question for the jury. Id. at 10.

Safeway, on the other hand, argues that "to satisfy the elements of a prima facie case so as to cause an inference of discrimination to arise, which is the only way Greene can argue that he is entitled to a jury determination of his age discrimination claim, he must show 'a logical connection' between his prima facie case showing and the inference of discrimination which he seeks." Safeway's Supplemental Brief at 3 (emphasis added). Safeway adds that no such logical connection "can be drawn from Greene's replacement by a man five years his senior just as none can be drawn from 'the replacement of one worker with another worker insignificantly younger.'" Id. at 3.

We cannot agree with the somewhat dogmatic positions taken by either party. We reject Safeway's position that showing the presence of the required elements of a prima facie case "is the only way" Greene can argue that he is entitled to a jury determination on his

11

ADEA claim. As we have noted, our circuit has held that an ADEA plaintiff may attempt to meet his burden of showing that age was a determining factor in the challenged decision "directly, by presenting direct or circumstantial evidence that age was a determining factor in his discharge . . . ," or more typically the plaintiff may rely on the McDonnell Douglas prima facie scheme of proof. Lucas, 857 F.2d at 1400. See Hebert v. Mohawk, 872 F.2d 1104, 1110 n.7 (1st Cir. 1989) (plaintiff entitled to day in court even if traditional prima facie scheme of proof not followed but direct or circumstantial evidence of age discrimination is presented). We will shortly consider whether Greene made a submissible case for the jury by presenting sufficient direct or circumstantial evidence that age was a determining factor in his discharge. We now hold that Safeway's effort to confine Greene to the prima facie case approach as "the only way" Greene could proceed is unconvincing and is rejected.

However, we likewise cannot accept fully Greene's analysis made in the wake of O'Connor. We said in Lucas that under McDonnell Douglas and Burdine, a plaintiff "must ordinarily prove," inter alia, that "a younger person" replaced her or him. Lucas, 857 F.2d at 1400; see also Denison, 941 F.2d at 1420 (an ADEA"plaintiff must ordinarily prove that . . . (4) a younger person replaced [him]."). Cone does state the fourth element without the "ordinarily" qualification, but it cites the Denison and Lucas cases and we do not read it as transforming the requirement into an absolute one.

Admittedly, our use of the word "ordinarily" in Lucas and Denison could arguably be read as suggesting that in an extraordinary case, a plaintiff may be relieved from

12

satisfying the four elements of the <u>McDonnell Douglas</u> test for establishing a <u>prima</u> <u>facie</u> case of employment discrimination. Or perhaps "ordinarily" has been used simply to connote the fact that the flexible <u>McDonnell Douglas</u> approach is meant to be adapted to the particular type of adverse employment decision in question. For example, where a plaintiff is discharged as a result of a so-called "reduction in force," he or she is not replaced by someone so that the fourth factor can be analytically applied. In this instance, the <u>prima facie</u> test is modified to fit the particular situation by allowing the plaintiff to show that older employees were fired while younger ones in similar positions were retained. <u>See</u> <u>Ingels v. Thiokol Corp.</u>, 42 F.3d 616, 621 (10th Cir. 1994); <u>Jones v. Jones Brothers Constr. Corp.</u>, 879 F.2d 295, 299 (7th Cir. 1989).

In the instant case, however, we need not reach the issue whether this Circuit allows a plaintiff in an "extraordinary" situation to present a <u>prima</u> <u>facie</u> case through the <u>McDonnell Douglas</u> burden shifting approach even though the plaintiff fails to satisfy one or more of the prongs. Instead, we conclude that under the alternative approach our precedents recognize, based on the evidence admitted at trial, Greene presented a submissible case of discrimination based on direct and circumstantial evidence without relying on the <u>McDonnell Douglas</u> test.

**IV**

Turning from the <u>prima</u> <u>facie</u> scheme of proof for ADEA cases, we now consider the alternative method of establishing an ADEA claim mentioned first in our <u>Lucas</u> opinion --

13

whether Greene met "his burden directly, by presenting direct or circumstantial evidence that age was a determining factor in his discharge." 857 F.2d at 1400; see also Hebert v. Mohawk, 872 F.2d at 1107 n.7 (if the plaintiff is able to present other direct or circumstantial evidence of age discrimination, apart from the more familiar prima facie case approach, he is still entitled to his day in court). Of course, as noted earlier in reviewing the grant of Safeway's Rule 50(a) motion, we must view the evidence and all reasonable inferences that can be drawn from it most favorably to Greene as the nonmoving party. And we must be mindful that a ruling which deprives a party of a determination of the facts by a jury "should be cautiously and sparingly granted." Cockrell v. Boise Cascade Corp., 781 F.2d 173, 177 (10th Cir. 1986).

First, Greene has presented evidence that within 12 months after Mr. Burd became President (and shortly also the CEO) of Safeway at age 42, I Aplt. App. at 151, eight top-level executives over the age of 50 were replaced by younger persons. Mr. Magowan, age 51, resigned and was succeeded as President in October 1992 and as CEO in March 1993 by Mr. Burd. Aple. App. at 20-22; I Aplt. App. at 341. Mr. Kinnie, Chief Operating Officer, was also replaced by Burd, who was some seven or eight years younger than Kinnie. I Aplt. App. at 199. Chief Financial Officer Mike Pfarr resigned and was replaced by a younger man under 50, Mr. Day. Id. at 161, 173, 199. Phoenix Division Manager Don Gates, who was over 60, retired and was replaced in March 1993 by David Weed, who was 41. Id. at 158-59, 202; II Aplt. App. at 655, 677-78. Human Resources Director Ron

14

Zachary, age 54, had his position eliminated, with the tasks assumed by Diane Peck and Sharon Collins. I Aplt. App. at 160-61. Bernat Rosner, the general counsel, who was at retirement age, retired and was replaced by Mike Ross. Id. at 173. Dean Gantt, Phoenix Marketing Operations Manager, who was in his early 50s, was fired and replaced by Wayne Foxworthy. Id. at 159-60. Finally, Bill McDown, Division Manager of the Eastern Division, age 60, retired early and was replaced by a younger man, Jim Donald, who was 39. Id. at 209, 340-41; II Aplt. App. 655.

It is true that of the eight men, three "retired" and two others "resigned." However, only Mr. Rosner appears to have been at retirement age, and more importantly, their departures occurred virtually en masse. Combined with Greene's testimony that Burd was willing to "do [him] the favor of letting [him] resign," I. Aplt. App. at 230, the proof as a whole was sufficient for a jury to infer that with Burd's ascendancy, there was a high-level effort that caused these retirements or resignations and that age was "a" determining factor, Lucas, 857 F.2d at 1400. See, e.g., infra n.3 (detailing settlement agreements and releases obtained by Safeway from executives Pfarr and Kinnie); cf. I Aplt. App. at 341-42 (testimony by Magowan that he "certainly would" dispute that he had been forced to step down).

We have recognized the relevance and force of such evidence of a pattern of dismissals in Bingman v. Natkin & Co., 937 F.2d 553, 556-57 (10th Cir. 1991). There we upheld a judgment for the plaintiff on his ADEA claim, rejecting the employer's argument

15

that the trial court erred in admitting evidence that two 60-year-old employees were laid off about a year after the 60-year-old plaintiff was dismissed. We stated that:

> evidence concerning the make-up of the employment force and events which occurred after plaintiff's termination were entirely relevant to the question of whether or not age was one of the determinative reasons for plaintiff's termination; and, as the trial court found, <u>evidence not too remote in time that defendant terminated others in the 60-year-old age group would be entirely relevant to the question of defendant's policies and practices.</u>

Id. at 556-57 (emphasis added). Here the statistical data, while of course not conclusive, raised a justiciable issue of material fact which must proceed to trial. See Hebert v. Mohawk, 872 F.2d at 1114-15 n.13. In Morgan v. Arkansas Gazette, 897 F.2d 945 (8th Cir. 1990), there was evidence of a pattern of employees over 40 leaving the circulation department and being replaced by younger employees. The Eighth Circuit referred to this showing as one thread of evidence that led to upholding an age discrimination award:

> "[t]his fact is certainly not conclusive evidence of age discrimination in itself, but it is surely the kind of fact which could cause a reasonable trier of fact to raise an eyebrow, and proceed to assess the employer's explanation for this outcome."

Id. at 951 (quoting MacDissi v. Valmont Industries, Inc., 856 F.2d 1054, 1058 (8th Cir. 1988)).

In addition to Greene's evidence offered to show a pattern of removals based on age, there were statements of Mr. Burd to Greene suggesting an inference of age motivation in these management replacements. One of the explanations made by Mr. Burd to Greene on discharging him was that "he didn't fit in with the new culture." I Aplt. App. at 174.

16

Mr. Burd told Greene that Burd wanted to move forward with his "new team and I just don't have a place for you on the new team." Id. at 228. Against the backdrop of evidence of numerous replacements of older by younger executives, a reasonable jury could infer from these statements that Burd meant that Greene at his age would not fit in with the younger executives. See Morgan v. Arkansas Gazette, 897 F.2d at 950(noting, as one thread of age discrimination evidence, testimony of fellow employee's statement that plaintiff was fired because he was not part of the company's "new wave or new movement.").

Further, the circumstances would reasonably support an inference that King was to serve as a temporary replacement who, as an older person, would be a defense against any age discrimination claim by Greene. See Loeb v. Textron, Inc., 600 F.2d 1003, 1013 n.9 (1st Cir. 1979) ("The older replacement could have been hired, for example, to ward off a threatened discrimination suit."); Howard C. Eglit, Age Discrimination § 7.18, at 7-102 to 7-103 (2d ed. 1995) ("This judicial position . . . makes sense in a situation where an older replacement is hired in an effort to make the defendant's employment practices look better to avert a threatened discrimination suit."); cf. Furnco Construction Corp. v. Waters, 438 U.S. 567, 579 (1978) ("a racially balanced work force cannot immunize an employer from liability for specific acts of discrimination").[3] In further support of the temporary nature of

---

[3]A jury could infer that there was sensitivity by Safeway to age discrimination claims in the removal of the executives discussed earlier in this opinion. For example, in the case of Mr. Pfarr, the company obtained a February 10, 1994, agreement by which Pfarr released all claims, demands, damages, etc. "under the Age Discrimination in Employment Act of 1967, as amended ('ADEA')," inter alia. This was executed by Mr. Pfarr and Mr. Oder (who had been an employment lawyer) for

(continued...)

17

King's appointment, Greene argues there was evidence that King was surprised by the Denver appointment because, as had been announced, King planned to retire in a couple of years in Seattle. I Aplt. App. at 324-26. This is supported by witness Denita Renfrew, who testified that King "explained that he was as surprised as we were . . . that he . . . was only going to be around for a couple of years, and he was very surprised he was coming to Denver." Id. at 387-88. Renfrew further testified that King expressed his intention to retire in Seattle. Id. at 388.

We agree that when considered favorably to Greene, as they must be, these evidentiary showings altogether raised a fact question for the jury which could justify the trier of fact in disregarding King's status as an older replacement and in nevertheless finding age discrimination.

In addition to the First Circuit's view expressed in Loeb v. Textron, Inc., supra, there are other cases where replacement by an older employee has been viewed as not fatal to an age discrimination claim. In Alphin v. Sears, Roebuck & Co., 940 F.2d 1497, 1500-01

---

[3](...continued)
Safeway. The settlement agreement between Pfarr and Safeway provided that in further consideration of Pfarr's release of claims, Safeway shall pay to Pfarr a lump sum settlement in the amount of $800,000. The agreement stipulated that $400,000 of the settlement payment was allocable to Pfarr's claims under the ADEA and for personal injury, and $400,000 was allocable to his other claims. Aple. App. at 25C-25D.

Furthermore, Safeway obtained a release by Mr. Kinnie, in connection with his resignation effective June 1, 1993, as Executive Vice President and Chief Operations Officer-Retail, in October 1993. This settlement agreement and general release was signed by Mr. Kinnie and by Mr. Oder for Safeway. Among other things it provided that Mr. Kinnie released and discharged Safeway with respect to all claims, demands, damages, etc. under, inter alia, the Age Discrimination in Employment Act. Aple. App. at 31, 35.

18

(11th Cir. 1991), a summary judgment for the employer was reversed.  Alphin, 50 years of age, was replaced by a 51-year-old employee who was shortly transferred and resigned, allegedly due to embarrassment caused by comments about him made before younger employees.  Also there was proof of a derogatory remark about Alphin's age and circumstantial evidence such as Alphin's favorable job evaluations.  The Eleventh Circuit noted it had generally required age discrimination plaintiffs to prove replacement with a younger employee, but there held it would not do so:

> Nonetheless, under the special factual circumstances of this case, we agree that Alphin's allegations that Sears transferred Brigante to Alphin's position as part of a strategy to eliminate two employees from the protected group, would also constitute a showing of discrimination on the basis of age.

940 F.2d at 1501.  See also Pitre v. Western Electric Co., Inc. 843 F.2d 1262, 1272 (10th Cir. 1988) ("that a member of a protected class was hired or promoted in place of a Title VII plaintiff has repeatedly been held insufficient to insulate the employer from liability.");  Haskell v. Kaman Corp., 743 F.2d 113, 122 (2d Cir. 1984) (citing Loeb in dicta);  Douglas v. Anderson, 656 F.2d 528, 533 (9th Cir. 1981) (same).

Further, we note the contention of Greene that "[f]iring an employee to save the cost of benefits can be evidence of age discrimination where, as here, vesting is tied directly to age, rather than to a non-age based criterion such as years of service."  Greene relies on Hazen Paper Co. v. Biggins, 507 U.S. 604 (1990), inter alia.  Plaintiff-Appellant's Opening Brief at 31.  We agree that evidence of dismissal prior to vesting in an exclusively age-based plan, where other independent evidence of age-based animus is present, may be considered

by the trier of fact under proper instructions. To establish a disparate treatment claim under the ADEA, "a plaintiff must show that age actually motivated an employer's decision." Ellis v. United Airlines, Inc., 73 F.3d 999, 1004 (10th Cir. 1996). The standards for doing so are analyzed in depth in Hazen Paper. There the Court reviewed a judgment for an ADEA plaintiff where the court of appeals relied heavily, in affirming the judgment, on evidence that the employers fired the employee plaintiff to prevent his seniority-based pension benefits from vesting. The Supreme Court held, inter alia, that there is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age. 507 U.S. at 609. The Court noted that the disparate treatment theory is, of course, available under the ADEA, which was the plaintiff's only claim in Hazen Paper.[4] The Court noted that Congress' promulgation of the Act was prompted by its concern that older workers were being deprived of employment on the basis of inaccurate and stigmatizing stereotypes such as that productivity and competence decline with old age. The Court stated that the Act commands that employers instead evaluate employees on their merits, not their age; employers cannot rely on age "as a proxy for the employee's remaining characteristics, such as productivity, but must instead focus on those factors directly." Id. at 611.

The Court then reasoned that when the employer's decision is wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears, even if the motivating factor is correlated with age as pension status typically is. "Yet an

---

[4]In Ellis v. United Air Lines, Inc., supra, 73 F.3d at 1007, we held that disparate impact claims are not cognizable under the ADEA.

20

employee's age is analytically distinct from his years of service." Id. at 611. Thus an employer can take account of one while ignoring the other and a decision based on years of service is not necessarily "age based." Id. The Court said:

> Perhaps it is true that older employees of Hazen Paper are more likely to be "close to vesting" than younger employees. Yet a decision by the company to fire an older employee solely because he has nine-plus years of service and therefore is "close to vesting" would not constitute discriminatory treatment on the basis of age. The prohibited stereotype ("Older employees are likely to be --") would not have figured in this decision, and the attendant stigma would not ensue. The decision would not be the result of an inaccurate and denigrating generalization about age, but would rather represent an accurate judgment about the employee -- that he indeed is "close to vesting."

Id. at 611-12 (emphasis in original).

The Court said it did not consider the special case where an employee was about to vest in benefits "as a result of his age, rather than years of service . . . and the employer fires the employee in order to prevent vesting." Id. at 613 (emphasis in original). Finally the Court added that our "holding is simply that an employer does not violate the ADEA just by interfering with an older employee's pension benefits that would have vested by virtue of the employee's years of service." Id. at 613.

We now have a case like that reserved for a possible ADEA claim by Hazen Paper -- a case with a discharge where the employee, Greene, is approaching vesting under a plan conditioned exclusively on age, and one in which there is other evidence which could support an inference of age discrimination. In the consideration of Greene's case, we are persuaded by his contention that the jury may, under a proper charge, consider as some evidence of age

21

discrimination the fact of his discharge which prevented his vesting based on <u>age</u>. If the jury is so instructed, then the discharge before Greene vested on the basis of age may be considered with other evidence the jury feels persuasive on the issue of age discrimination. On remand at the retrial, the jury should be told that if it finds from all the evidence that it is more likely than not that a determining factor for the discharge was Greene's age, they should find for him on his ADEA claim; that if it not be so found, then the finding should be that the company is not liable on the ADEA claim.

In addition, we note that there was sufficient evidence in the record from which a reasonable jury could have concluded that Safeway's reasons for terminating Greene were pretextual. Jury disbelief in proffered reasons for an adverse employment decision, while not sufficient to <u>compel</u> a finding of discrimination, is sufficient to <u>support</u> such a finding when combined with other direct or circumstantial evidence. <u>St. Mary's Honor Center v. Hicks</u>, 113 S. Ct. 2742, 2749 (1993); <u>Randle v. City of Aurora</u>, 69 F.3d 441, 452-53 (10th Cir. 1996).

In this case, Greene testified that the reasons given for terminating him were that he was a poor merchandiser; sales had flattened or declined in the established stores; he was "pessimistic" about competition with King Soopers; and he was intimidating. I Aplt. App. at 228-29. However, there was evidence presented that, if taken as true, would tend to show that these reasons were pretextual. Burd did not mention any of these alleged problems with Greene's management style to Greene. I Aplt. App. at 151, 156-57, 162-64 (testimony of

22

Steve Burd); id. at 284, 290 (testimony of Robert Greene). The record also contains a number of memoranda from Burd and other officials praising Greene and the Denver Division, without mentioning any dissatisfaction with Greene's management style. See II Aplt. App. at 439 (Nov. 5, 1992 memorandum from Burd) ("My enthusiasm for your efforts has caused me to tout the Denver experience as a model of how we need to pursue change going forward."); id. at 459 (April 6, 1993 memorandum from Bob Kinnie) ("I want to say `thank you' to the `Denver team' for the fine results reported for the third period and for the first quarter of 1993!"). Thus, while a jury could have accepted Safeway's reasons for firing Greene, it could also have rejected those reasons as pretextual and inferred discrimination.

## V

In sum, viewing the evidence as a whole in the light most favorable to Greene, and according him the benefit of all reasonable inferences, as we must, we are convinced that the district court erred in granting judgment as a matter of law in favor of Safeway, depriving Greene of a determination by the jury on his ADEA claim. Accordingly we **REVERSE** and **REMAND** for a new trial on Greene's ADEA claim.

23