**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 27 2004**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

JESSICA PLATERO,

      Plaintiff-Appellant,

v.

JEFF BAUMER; DAVID SANDERS;
WILLIAMS FIELD SERVICES
COMPANY,

      Defendants-Appellees.

No. 03-2167
(D.C. No. CIV-01-1318)
(D. N.M.)

---

ORDER AND JUDGMENT *

---

Before **EBEL**, **ANDERSON**, and **BRISCOE**, Circuit Judge.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff Jessica Platero appeals from the entry of summary judgment for defendant Williams Field Services [1] in this Title VII action challenging her termination during a reduction in force (RIF) after nineteen years' employment with defendant and its predecessors. Plaintiff, a Navajo woman over forty, claims that she was selected for the RIF based on her race, gender, and age. [2] The district court rejected the gender claim for failure to establish a prima facie case under the analytical framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and plaintiff does not challenge that determination. The district court acknowledged that plaintiff had made out a prima facie case for age and race discrimination (which defendant does not challenge), but held that defendant had offered a legitimate basis for terminating plaintiff and that plaintiff had failed to demonstrate a triable case that this rationale was a pretext for discrimination. On de novo review, *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002), we conclude that plaintiff has demonstrated genuine issues of material fact as to pretext that under controlling precedent of this circuit preclude the entry of summary judgment for defendant. We therefore reverse and remand for further proceedings.

---

[1] The dismissal of the individual defendants is not at issue on this appeal.

[2] Plaintiff also alleged in her pleadings that the termination violated seniority rights, but she subsequently abandoned this undeveloped contractual claim and we do not consider it.

Defendant relied on a "Right Way, Right Results" (RWRR) assessment process, in which plaintiff was very unfavorably evaluated, as the basis for its decision to select her for the RIF. This process, insofar as it is evidenced in our record, consisted of a single-paragraph string of conclusory subjective judgments wholly without grounding in concrete factual reference. Indeed, as the district court acknowledged, the level of reference is in some instances so vague that it is impossible to determine in a meaningful way what the criticism even means. We have repeatedly stressed that subjective judgments are viewed with skepticism in the pretext inquiry. *See id.* at 1218 (collecting cases). But the subjective generality of the RWRR is not even the primary concern here. The dispositive deficiency in defendant's case arises from a comparison of the RWRR with a roughly contemporaneous supervisory evaluation of plaintiff's performance completed in the ordinary course of her employment.

"A plaintiff can show pretext by revealing 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action [such] that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reason.'" *Id.* at 1217 (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10 th Cir. 1997) (further quotation omitted)). Accordingly, this court has recognized on numerous occasions that a Title VII

plaintiff can defeat summary judgment by demonstrating that an evaluation offered to justify her termination conflicts with other assessments of her work performance. *See, e.g.*, *Garrett*, 305 F.3d at 1219; *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 564 (10 th Cir. 1996); *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1380 (10 th Cir. 1994). Here, aside from the more obscure comments, which elude meaningful comparison, every criticism in the RWRR is facially inconsistent with, if not in flat contradiction of, ratings plaintiff received from her supervisor for job performance and professional development during the year immediately preceding the RIF.

The rating system for plaintiff's employee evaluation used three bi-level categories. There were two levels for deficient performance: "Development Opportunity" levels D2 ("unsatisfactory," requiring "immediate and sustained improvement") and D1 ("expected [to] . . . improve" with "skills development or additional time in position"); two for satisfactory performance: "Effective" levels E2 ("solid") and E1 ("strong"); and two for exceptional performance: "Strength" levels S2 ("exceed[ing] that expected for the position") and S1 ("'industry expert' level"). Aplt. App. at 87. Globally, we note that plaintiff's RWRR unqualifiedly recites several negative judgments, but her employee evaluation does not include a single rating in the deficient range. Particularized comparisons reveal even more telling discrepancies.

-4-

The criticism in the RWRR begins with "[n]ot a team player." *Id.* at 58. In contrast, plaintiff's evaluation specifically included a "Teamwork" category in which she received two strong ratings (including "[b]uilds positive collaborative working relationships"). *Id.* at 89. She also had strong ratings for "[o]penly and honestly shares information," "[s]upports innovation and creativity in others," and "[a]ctively supports . . . Code of Team Behavior." *Id.* at 88-89. In addition, the RWRR's criticism that plaintiff "[d]oesn't go out of her way to help anyone," *id.* at 58, is contradicted by her strong rating for "helps others," *id.* at 89.

According to the RWRR, plaintiff was "protective of 'her duties,'" had a "'not my job' attitude," and was "resistant to change." *Id.* at 58. Her evaluation, however, reflects strong ratings for "[t]akes on new assignments, responsibilities, or challenges without hesitation" and "[l]earns from experience; not stuck in old ways." *Id.* at 90.

Finally, the RWRR describes plaintiff as "[l]acking in skills–computer" and "not willing to take on other than the basic." *Id.* at 58. But her evaluation has all strong ratings in the "Knowledge and Skills" category, including "professional or technical expertise needed for the assigned functional areas" and "[s]tays abreast of developments in her field; works to enhance job knowledge." *Id.* at 88. A summary near the end of the evaluation specifically cites as a strength the fact

that plaintiff "continues to work on improving her job performance and the ever-changing computer programs skills." *Id.* at 91.[3]

It could be that the performance evaluation, not the RWRR, is inaccurate and, thus, that the discrepancies evident here might be resolved in favor of defendant's position. But that just reflects the existence of the very dispute that should not have been preempted by summary judgment. It is also possible that with additional evidence defendant could show that the discrepancies are merely artifacts of different (but still legitimate) purposes and standards operative in the RWRR context. No such evidence has been proffered and, in any event, absent a conclusive showing it would just create another issue for trial. Nor has defendant attempted to establish that the inconsistencies in plaintiff's ratings were legally immaterial, in that all similarly situated employees retained in the RIF outscored plaintiff on both the RWRR and their employee evaluations. In sum, there is no basis in our record to factually discredit or legally discount the discrepancies between plaintiff's performance evaluation and her RWRR.

---

[3]    The RWRR also included statements that, as the district court noted, were so vague as to make comparative assessment impossible. The district court attributed the deficiency to plaintiff, faulting her for not developing the record to make sense of the opaque criticism involved. This analysis prematurely shifted the *McDonnell Douglas* burden from defendant, which must at least articulate a "clear and reasonably specific" rationale for the action taken before plaintiff is required to counter with a showing of pretext. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 258 (1981). In any event, the many sharp discrepancies cited above are enough to preclude summary judgment here.

The district court appears to have dismissed out of hand any argument for pretext based on inconsistencies between the RWRR and plaintiff's performance evaluation because "the annual evaluations were all performed by one supervisor, . . . while the RWRR assessment was all performed by a different individual." *Id.* at 137; *see also id.* at 138 (holding that only RWRR, not evaluation, is relevant to disposition of case). Defendant takes up this point, arguing that in circumstances giving rise to an inference of discrimination, an employee may be terminated–and the inference of discrimination defeated as a matter of law–based on conclusory subjective criticisms that are inconsistent with evaluations by the employee's own supervisor, provided the criticisms come from someone else (the very person whose allegedly discriminatory action requires justification). No Tenth Circuit authority is cited supporting this facially dubious notion, which would render our pretext cases discussed above practically meaningless. Indeed, one of those cases recognized a triable issue of pretext based on discrepancies among evaluations clearly carried out by several different people. *See Garrett*, 305 F.3d at 1213-15, 1218-19. Further, defendant's position is not even supported by the cases cited from courts outside of this circuit, where a drop in the plaintiff's performance rating used to justify an allegedly discriminatory action was not abruptly created by the very person taking the action but arose in ordinary course following the plaintiff's transfer to and subsequent evaluation *by a different supervisor*.

The district court also was critical of plaintiff for not developing the record regarding potential explanations for the inconsistencies between the RWRR and her evaluation. For reasons similar to those we expressed above for not faulting the plaintiff for obscurities in the defendant's proffered justification, *supra* n.3, we think this criticism of plaintiff inappropriately shifts the *McDonnell Douglas* burden. Once the plaintiff establishes facially material inconsistencies regarding the defendant's rationale for the challenged employment action, a genuine issue of pretext arises and it is not the plaintiff's burden to prod the defendant into offering self-serving explanations of the inconsistencies.

Following this court's prior decisions in *Garrett*, *Greene*, and *Cole*, we hold that, on the record developed thus far, the numerous facial inconsistencies between plaintiff's performance evaluation and the RWRR assessment give rise to a triable issue of pretext precluding summary judgment. For reasons previously indicated, however, additional factual development could potentially alter that conclusion. Thus, while we reverse summary judgment, we do not specifically remand "for trial" but more generically "for further proceedings," which does not rule out a properly supported second motion for summary judgment.

The judgment of the district court is REVERSED, and the cause is

REMANDED for further proceedings consistent with this order and judgment.


Entered for the Court


Mary Beck Briscoe
Circuit Judge