**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 21 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

GRACIELA ORNELAS,

Plaintiff-Appellant,

v.

No. 99-2123

REGENTS OF THE UNIVERSITY OF
NEW MEXICO; DEBORAH
RIFENBARY, Ed.D.; WILLIAM
FISHBURN, Ed.D.,

(D.C. No. CIV-98-0418 JC/JHG-ACE)
(D. N.M.)

Defendants-Appellees

**ORDER AND JUDGMENT**[*]

Before **HENRY** and **PORFILIO**, Circuit Judges, and **WEINSHIENK**,[**] District Judge.

Graciela Ornelas appeals the district court's grant of judgment as a matter of law

against her and in favor of the defendants the Regents of the University of New Mexico,

Dr. Deborah Rifenbary, and Dr. William Fishburn. In trial proceedings before the district

court, Ms. Ornelas challenged her removal from an internship class for the spring

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] The Honorable Zita L. Weinshienk, Senior District Judge for the United States District Court for the District of Colorado, sitting by designation.

semester of 1997. Pursuant to 42 U.S.C. § 1983, she alleged that the removal constituted retaliation for activity protected by the First Amendment: writing a letter in support of a professor's application for tenure and participating in a panel discussion concerning discrimination encountered by minority students. Ms. Ornelas also alleged that the removal violated her procedural due process rights under the Fourteenth Amendment. For the reasons set forth below, we affirm the district court's decision.

## I. BACKGROUND

Ms. Ornelas began graduate school in the Counseling Program in the University of New Mexico's Department of Education in the fall of 1994. During the spring 1996 semester, Ms. Ornelas (who was president of the Counseling Graduate Student Association) and a fellow student wrote a letter to the University Provost protesting the denial of tenure to a professor in the Counseling Program, Dr. Susan Cameron. The letter praised Dr. Cameron's commitment to teaching and to supporting "underrepresented students of color." Rec. Ex. Addendum, at 3. "Unlike other professors," the letter continued, "[Dr. Cameron] incorporates multiculturalism and ethics into her classrooms." Id. at 4. During the same semester, Ms. Ornelas participated in a panel discussion about racism on campus. In the course of the discussion, she stated that "[m]ost minority students don't feel comfortable at school." Id. at 5. She added that she had to "second-guess [her]self about [her] aptitudes, about [her] qualities and about [her] accent." Id.

Ms. Ornelas took several courses with the defendant Dr. Rifenbary.  In the fall 1996 semester, she enrolled in her field practicum class, which required students to serve in supervised counseling positions in the community and to participate in weekly classroom sessions on campus.

Early in the semester, Ms. Ornelas met with another professor, Dr. David Scherer, to complain about Dr. Rifenbary.  She told him that Dr. Rifenbary had graded her unfairly on a paper in a prior class and had made an inappropriate remark regarding Hispanics.  Ms. Ornelas also repeated a rumor that she had heard that Dr. Rifenbary had engaged in an improper sexual relationship with a student.  Dr. Scherer informed Dr. Rifenbary about some of Ms. Ornelas's concerns.

According to Dr. Rifenbary, she did not learn that Ms. Ornelas had repeated the rumor about an inappropriate sexual relationship until late in the fall semester.  However, before learning about Ms. Ornelas's repeating the rumor, Dr. Rifenbary became concerned about Ms. Ornelas's participation in the internship class.   Dr. Rifenbary testified that Ms. Ornelas would turn her back whenever she would speak and would make comments to the other students.  Dr. Rifenbary began to "[feel] that there was an atmosphere . . . not completely conducive to a positive learning environment" and that, because of the conflicts with Ms. Ornelas, she could not effectively supervise her. See Rec. vol. II, at 71.

Dr. Rifenbary was also concerned about Ms. Ornelas's handling of a case

presentation. She testified that Ms. Ornelas notified her only a few minutes before the scheduled class that she would not be able to give the presentation. Because nearly all of the class had been set aside for Ms. Ornelas's presentation, Dr. Rifenbary was left with very little time to prepare alternative material. According to Dr. Rifenbary, the reason given by Ms. Ornelas—an eleventh hour change in the diagnosis given to the patient by the supervising counselor—was insufficient to justify Ms. Ornelas's failure to give her presentation.

Ms. Ornelas completed the requirements for the internship class for the fall 1996 semester, and Dr. Rifenbary gave her credit for the class.[1] However, Dr. Rifenbary reported her concerns about Ms. Ornelas to the rest of the faculty. After discussing the matter at a January 21, 1997 meeting, the faculty voted to remove Ms. Ornelas from Dr. Rifenbary's internship class for the spring 1997 semester. In a letter to Ms. Ornelas explaining the basis of the faculty's decision, the defendant Dr. Fishburn (the coordinator of the Counseling Program) stated that her "behavior and verbalizations [were] frequently, contentious, antagonistic and generally disruptive to the academic enterprise" and that "there is a serious concern over [her] apparent difficulty in responding to academic and clinical supervision." Ex. Addendum at 9.

On February 4, 1997, Dr. Fishburn telephoned Ms. Ornelas and told her that she would be allowed to appear in person at a faculty meeting on the following day to

---

[1] The internship class was graded on a credit/no credit basis.

challenge the decision to remove her from the internship course. Ms. Ornelas appeared at the faculty meeting and argued against the decision. The faculty denied her appeal but appointed a special committee to address the issue of how she could complete the internship requirements. However, after receiving a letter from a lawyer representing Ms. Ornelas, the faculty decided to dissolve the special committee That decision was based on the lawyer's request that "any future communication regarding my client be done directly through my office and no contact other than regular school work and school directives be made with my client." Aple. Supp. App. at 14. Eventually, the faculty allowed Ms. Ornelas to complete the internship class and awarded her a masters degree in counseling.

Ms. Ornelas filed the instant case in New Mexico state court in March 1998, naming the Regents of the University of New Mexico, Dr. Rifenbary, and Dr. Fishburn as defendants. The defendants removed the case to the federal district court. After hearing Ms. Ornelas's evidence at trial, the court granted judgment as a matter of law on both her First Amendment retaliation claim and her procedural due process claim under the Fourteenth Amendment. The court reasoned that Ms. Ornelas had failed to establish a causal connection between the protected activity (her letter protesting the denial of tenure to Dr. Cameron and her participation in the panel discussion on minority students) and the decision to remove her from the internship class. The court added that affording Ms. Ornelas the opportunity to appeal the initial decision at the February 5, 1997 faculty

meeting and appointing a special committee to assist her in completing the internship

class in the future satisfied the requirements of the Due Process Clause.

## II. DISCUSSION

We engage in de novo review of the grant of judgment as a matter of law, applying

the same standards as the district court pursuant to Fed. R. Civ. P. 50. Judgment as a

matter of law is warranted only if "the evidence and all inferences to be drawn therefrom

are so clear that reasonable minds could not differ on the conclusion." Greene v. Safeway

Stores, Inc., 98 F.3d 554, 557 (10th Cir. 1996) (quotation omitted). We construe the

record in the light most favorable to the nonmoving party. Id.

## A. First Amendment Claim

The Supreme Court has held that a state university cannot expel a student in

retaliation for engaging in activity protected by the First Amendment. See Papish v.

Board of Curators of the Univ. of Mo., 410 U.S. 667, 669-71 (1973). In order to establish

a retaliation claim cognizable under the First Amendment, the plaintiff student must

prove that her speech was constitutionally protected and that it was a "substantial" or

"motivating" factor in the challenged decision. See Mt. Healthy City School Dist. Bd. of

Educ. v. Doyle, 429 U.S. 274, 287 (1977); Kelleher v. Flawn,761 F.2d 1079, 1083 (5th

Cir. 1985). If the plaintiff meets that burden, then the defendant may defeat the claim if he or she proves by a preponderance of the evidence that the same decision would have been made even in the absence of the protected speech. See Mt. Healthy City Sch. Dist., 429 U.S. at 287.

When the alleged retaliatory decision involves an academic issue, we afford substantial deference to the explanations given by the faculty. As the Supreme Court has observed:

> [W]hen judges are asked to review the substance of a genuinely academic decision . . . they should show great respect for the faculty's professional judgment. . . . [T]hey may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.
>     Considerations of profound importance counsel restrained judicial review of the substance of academic decisions.

Regents of Univ. of Mich. v. Ewing, 474 U.S. 214, 225 (1985) (citations omitted).

Here, Ms. Ornelas contends that there was sufficient evidence from which a reasonable jury could conclude that the Counseling Department's decision to remove her from the internship class constituted retaliation for activity protected by the First Amendment (her letter protesting the denial of tenure to Dr. Cameron and her participation in the panel discussion on diversity issues). She invokes a variety of evidence from the trial proceedings.

First, she notes that Dr. Cameron and Dr. Fishburn both expressed disagreement

with her assessment of the lack of commitment to diversity in the Counseling Department. She also cites testimony regarding Dr. Rifenbary's comments about her competence. See, e.g., Rec. vol. II at 236. (testimony of a fellow student that Dr. Rifenbary stated after the removal from the internship class that Ms. Ornelas would "never graduate").

Additionally, Ms. Ornelas questions Dr. Rifenbary's judgment that Ms. Ornelas's behavior warranted her removal from the internship class. She observes that, in spite of the problems noted by Dr. Rifenbary, Ms. Ornelas received credit for the fall semester class. According to Ms. Ornelas, the reasons for the decision were "trivial, irrelevant or . . . vague." Aplt's Br. at 10. She further alleges that, in arguing for Ms. Ornelas's removal, Dr. Rifenbary concealed certain key information from the faculty: a favorable evaluation that Ms. Ornelas received from the psychologist who had provided on-site supervision of her internship.

Moreover, Ms. Ornelas points to certain conduct of Dr. Rifenbary after the January 1997 decision. She notes that Dr. Rifenbary contacted potential employers to express her negative assessment of Ms. Ornelas's qualifications. According to Ms. Ornelas, that conduct reveals Dr. Rifenbary's retaliatory animus against her. Finally, she cites testimony from other professors that her involvement in the dispute over the denial of tenure to Dr. Cameron and her participation in the diversity panel was "connected" to the earlier disputes about Dr. Cameron's tenure and about diversity on campus. See Rec. vol III at 322.

After careful review of the record, we agree with the district court that the evidence introduced by Ms. Ornelas was insufficient to warrant submission of her First Amendment retaliation claim to a jury. Most tellingly, Ms. Ornelas's retaliation theory is unable to account for the significant delay—from March 1996 until January 1997—between the protected activity and the allegedly retaliatory action. After Ms. Ornelas wrote the letter in support of Professor Cameron and participated in the diversity panel, she was allowed to enroll in Professor Rifenbary's fall 1996 internship class and in fact received credit for that class. The defendants presented a convincing explanation for the decision to require her to withdraw from the spring 1997 class: the conflicts with Professor Rifenbary that she reported in her meeting with Professor Scherer at the beginning of the fall 1996 semester and the quality of her actual class performance as the fall semester unfolded. The evidence presented at trial demonstrated that it was Professor Rifenbary's assessment of difficulties in the internship class created by the conflict with Ms. Ornelas, as well as her performance during the fall semester, that led to the challenged decision.

As the district court observed, the evidence introduced by Ms. Ornelas certainly demonstrates that she and Dr. Rifenbary "don't get along, and [that] [Ms. Ornelas] was going to have a tough time in that class." Rec. vol. III at 432. However, the evidence does not undermine the academic judgment made by the faculty. The testimony about Professor Rifenbary and Professor Fishburn's disagreement with her assessment of the

- 9 -

Counseling Program's commitment to diversity and their comments about her competence do not indicate that the particular decision here at issue was retaliatory. Moreover, the fact that Ms. Ornelas's on-site supervisor gave her a favorable evaluation does not undermine the conclusion that the classroom component of the internship class was adversely affected by Ms. Ornelas's conduct. Finally, the evidence of Dr. Rifenbary's subsequent contacts with Ms. Ornelas's employers, although demonstrating her negative assessment of Ms. Ornelas's qualifications, does not undercut the reasonableness of the faculty's prior academic judgment.

Accordingly, we conclude that the district court properly granted judgment as a matter of law to the defendants on Ms. Ornelas's First Amendment claim.

### B.  Due Process Claim

Ms. Ornelas also argues that the district court erred in granting judgment as a matter of law to the defendants on her procedural due process claim. She maintains that the Due Process Clause of the Fourteenth Amendment entitled her to notice of the contemplated decision to remove her from the internship class and an opportunity to respond to the faculty's concerns. She maintains that she was entitled to such notice before the faculty's initial decision.

In Board of Curators of the Univ. of Mo.  v. Horowitz, 435 U.S. 78, 82-91 (1978), the Supreme Court rejected a medical student's due process challenge to her dismissal.

The Court held that the procedures employed by the medical school faculty and administration comported with the Due Process Clause. The student had been informed of her deficiencies and afforded opportunities to improve. The school provided notice of the contemplated dismissal, as well as a careful and deliberate determination of the relevant issues. The Court observed that less stringent procedural requirements apply when a school makes an academic judgment about a student than when it takes disciplinary action.

In Harris v. Blake, 798 F.2d 419, 423-25 (10th Cir. 1986), this circuit applied Horowitz to a graduate student's due process challenge to the placement of a critical letter in his academic file and to the giving of low grades that eventually resulted in the school requiring him to withdraw from the program. After first concluding that the student had a constitutionally protected property interest in continued enrollment in the state college system, we held that the school's established appeal procedures provided him with due process. See id. at 423-24 (noting that the student "employed [the appeals] procedure and participated personally in the hearing to challenge his grades" and that the student "received several opportunities to present his position to responsible school officials").

Ms. Ornelas's due process challenge is foreclosed by Harris. Significantly, in contrast to the student in Harris, the decision that Ms. Ornelas challenges resulted in her removal from one class rather than an entire program. In light of the lesser individual interest involved, Ms. Ornelas was arguably entitled to less elaborate procedures than

- 11 -

those described in <u>Harris</u>.  <u>See</u> <u>Mathews v. Eldridge</u>, 424 U.S. 319, 334-35 (1976) (holding that the requirements of due process depend in part on the individual interest affected by official action).  Nevertheless, Ms. Ornelas received the kind of process that we approved in <u>Harris</u>:  the opportunity to personally participate in an appeal of the challenged decision to responsible university officials.  Like the district court, we see no indication in the record that the decision was a disciplinary rather than an academic one.  Thus, the Due Process Clause did not entitle Ms. Ornelas to  notice of the proposed decision prior to the January 21, 1997 faculty meeting.  Her opportunity to appeal the faculty's initial decision comported with due process requirements.  Thus, the district court properly granted the defendants' motion for judgment as a matter of law on Ms. Ornelas's procedural due process claim.[2]

---

[2] Although we share the concerns about academic freedom set forth in Judge Porfilio's concurrence, our reading of the cases suggests that Ms. Ornelas has sufficiently alleged state action.  Her complaint identifies the individual defendants as a professor and program chair at the University of New Mexico.  The University of New Mexico is a state educational institution.  N. M. Const. Art. XII, § 11 (stating that the University of New Mexico is a state educational institution); N. M. Stat. Ann. §§ 21-7-1 (establishing the University of New Mexico as a state university); N. M. Stat. Ann. § 21-7-10 (stating that "[t]he university shall be open to the children of all residents of this state and such others as the board of regents may determine, under such rules and regulations as may be prescribed by said board").

In <u>West v. Atkins</u>, 487 U.S. 42, 49-50 (1988), the Supreme Court explained that "state employment is generally sufficient to render the defendant a state actor," that "[i]t is firmly established that a defendant in a §1983 suit acts under color of state law when he abuses the position given to him by the State," and that, "generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law."  (Internal citations and quotations omitted).  Here, we read Ms. Ornelas's complaint as alleging that the defendants were performing their

(continued...)

III. CONCLUSION

For the reasons set forth above, we affirm the district court's decision granting judgment as a matter of law to the defendants the Regents of the University of New Mexico, Professor Rifenbary, and Professor Fishburn.

Entered for the Court,

Robert H. Henry
United States Circuit Judge

No. 99-2123, ***Ornelas v. Regents of the University of New Mexico***
Special Concurrence - **Porfilio**, Senior Circuit Judge

At the risk of appearing to be a pettifogger, I cannot accept the court's

---

[2](...continued)
official responsibilities as a professor and administrator at a state university when they took the challenged action. Cf. National Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179, 192 (1988) ("A state university without question is a state actor.").

The fact that we consider the defendants to be state actors does not undermine our deference to their academic decisions. We merely conclude the defendants are entitled to judgment as a matter of law because they complied with the requirements of the First Amendment and the Due Process Clause—not because of a lack of state action.

conclusion the defendants in this case were state actors.  To me, this conclusion trivializes the underlying purpose of § 1983 of allowing redress for invidious discrimination.[1]  Equally important, what we have done today seriously imperils academic freedom, the essence of education.

As I understand the court's view, its conclusion is predicated upon the simple fact the defendants were employees of the State of New Mexico.  In most instances, I would have no quarrel with that view; however, when that conclusion is applied to the facts of this case, it becomes shibbolethic.

The action upon which this suit was predicated, according to the plaintiff, was her "apparent dissent from [defendant] Rifenbary's views on the relationship of counseling to multi-culturalism."  She also averred defendant had made "threats, demeaning remarks . . . and concerted efforts to alienate plaintiff from other students and faculty."  It is nonetheless clear, however, that these acts center upon Professor Rifenbary's determination plaintiff's in-class conduct affected the academic atmosphere of the classroom.  Thus, I believe we have a genuine question of whether this action involves Professor Rifenbary as a representative of the State of New Mexico or as an academician exercising her inherent pedagogical judgment of what constitutes the best interests of her class.

---

[1]"The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."  **Wyatt v. Cole**, 504 U.S. 158, 161 (1992).

I recognize immediately I draw a fine line here. Yet, I believe it is a line that must be effected. This is not a case, such as those relied upon by the court, of a professor using his status over a student to gain sexual favors. Those are clearly *harassment* cases in whch the exercise of pedagogical judgment takes absolutely no part. In those cases, the harasser who needed the power his professorship gave him over his student to commit an illegal act was not only acting under color of state law but also in violation of the precise purpose of the civil rights law. But for the position created for each defendant by state law, the power necessary to commit the violation would not have been present.

In contrast, I believe every teacher, whether employed in a public or private capacity, has certain inherent rights and responsibilities which are essential to the proper performance of the task of educating students. One of those surely is the right to determine proper class discipline. If a student's behavior compromises the learning process and the educational opportunity of other students, the teacher has the right and responsibility to take appropriate and lawful action to eliminate that compromise. However, if every such academic action taken by a teacher on the public payroll is to be made subject to the scrutiny of federal courts, it will be judges and not teachers who decide what is proper classroom atmosphere. I cannot accept that notion.

The public employs its teachers to educate students, reflecting, I believe, a

public acceptance of the idea teachers, by training and experience, have knowledge of academia that sets them apart from the rest of society. Although judges also are possessed of special knowledge and experience, few have the basic tools to second-guess teachers on the exercise of their academic judgment.

For these reasons, I would conclude in this case plaintiff has failed to establish defendants were state actors in the sense required by §1983. I believe her complaint has failed to establish defendants' specific power of which she complains was "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *United States v. Classic*, 313 U.S. 299, 326 (1941). I believe it was not state law, but the inherent pedagogical authority of a teacher which made it possible for Professor Rifenbary to take the action which was the genesis of this case. I would affirm the judgment of the district court, then, but on the basis it had no jurisdiction.