**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**MAR 12 2004**

**TENNTH CIRCUIT**

**PATRICK FISHER**
**Clerk**

DONALD D. REED,

     Plaintiff-Appellee/Cross-
Appellant,

v.

NORMAN Y. MINETA, Secretary of
the Department of Transportation, on
behalf of the United States Department
of Transportation,

     Defendant-Appellant/Cross-
Appellee.

Nos. 02-1461 & 02-1462

(D.C. No. 98-N-1298 (MJW))

(District of Colorado)

**ORDER AND JUDGMENT**[*]

Before **EBEL**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **MURPHY**, Circuit Judge.

I.    **Introduction**

Plaintiff Donald Reed was terminated from his position as an air traffic

controller with the Federal Aviation Administration (FAA) when he failed to

report to work on five Saturdays in 1995. Reed thereafter filed suit in federal

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

district court alleging, *inter alia*, that the FAA violated Title VII by failing to accommodate his religious beliefs and by intentionally discriminating against him on the basis of his religion. The jury returned a verdict for Reed on both claims. The matter is before this court on the FAA's appeal from the denial of its motion for judgment as a matter of law and Reed's cross-appeal from the denial of his request for prejudgment interest.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we **affirm** the denial of the FAA's motion for judgment as a matter of law and **reverse** the denial of Reed's request for prejudgment interest.

## II.    Factual Background

Reed is a member of the Worldwide Church of God. His religious beliefs require him to refrain from working between sundown Friday and sundown Saturday. From November 1991 to August 1994, Reed was employed at the Pueblo, Colorado Airport as a Quality Assurance and Training Specialist ("QATS"). While in the QATS position, Reed was not required to work on his Sabbath. In December 1993, George Hof became the manager of the Pueblo facility. At trial, Reed testified that he informed Hof of his religious practice of strictly observing the Sabbath on Saturdays. Reed further testified that Hof routinely questioned him about his religious beliefs, repeatedly asked him which hours he could not work, and frequently asked him to complete projects on

Saturdays even though the QATS position did not ordinarily require him to work on Saturday.

Reed testified that Hof quizzed him several times about how he would be impacted if the QATS position was eliminated and threatened to remove him from the position. In August 1994, Hof arranged for the QATS position to be converted from a permanent position to a temporary position with a one-year term. Hof testified that his objective was to "give other controllers in the [Pueblo] facility the opportunity at a career enhancing position." Reed applied for the QATS position but was not selected from among three applicants. Reed testified that he thought his permanent QATS position was eliminated to create an accommodation problem and that he believed his qualifications were superior to those of Mike Turner, the individual chosen for the position. Reed did not, however, challenge either the conversion of the position or Turner's selection. On August 21, 1994, Reed was reassigned as one of the twelve controllers staffing the tower's daily operations. Reed assumed Turner's work schedule until October 1, 1994. Because Turner's regular days off were Thursday, Friday, and every other Saturday, Reed was scheduled to work only two Saturdays. Turner worked for Reed both of those Saturdays.

A collective bargaining agreement ("CBA") governs the rights and obligations of the FAA and the air traffic controllers of the National Air Traffic

Controllers Association. The CBA and a separately negotiated Facility Staffing Order governed the work schedules and staffing procedures at the Pueblo facility at the relevant time. The Facility Staffing Order could not be changed without agreement between FAA management and the union. Work schedules were established by a rotating bid system based on seniority. After October 1, 1994, Reed was required to bid his days off under the rotating seniority system. Reed was placed at the bottom of the list for selecting days off.[1] From October 1, 1994, through September 30, 1995, Reed was unable to obtain Saturdays off and, consequently, he formally requested an accommodation. Marlin Long, the area supervisor, sent Reed a written response to his request. Relying on his obligation to comply with the terms of the Facility Staffing Order, Long refused to approve Reed's request to accumulate compensatory time during the week and use it to avoid working between sunset Friday and sunset Saturday. Long suggested that Reed use annual leave to avoid working on his Sabbath or attempt to swap shifts with other controllers. Reed testified, however, that his ability to convince the other controllers to swap shifts with him was adversely affected when Hof instructed all the controllers to re-bid their days off, based on the hypothetical assumption that Reed would never be scheduled to work on Friday or Saturday.

---

[1]The Facility Staffing Order for the Pueblo facility states, "When a permanent staff person returns to the controller workforce, he/she shall be placed at the bottom of the NATCA bid list."

Reed testified that Hof's behavior "soured the position of the controllers with regard to [shift swapping] and with regard to me."

Reed proposed several alternative work arrangements but none were permanently implemented. Reed, however, successfully avoided working on his Sabbath until May 20, 1995, by swapping shifts, using annual leave, and earning compensatory time.

By March 1995, however, the number of air traffic controllers at the Pueblo facility had decreased to seven. In September 1994, a controller was allowed to transfer to another facility in order to be closer to a sick family member. That controller was not replaced. In January 1995, a Pueblo controller was permitted to swap assignments with Fred Arbuckle, a controller from a Houston, Texas facility. Arbuckle, however, was never able to obtain full certification to work in the Pueblo tower. In March 1995, the facility lost three additional controllers: two were decertified for committing operational errors and one was released to another facility to accept a promotion. Although the negotiated minimum staffing level at the Pueblo facility was nine controllers, the union agreed to allow the decrease in staffing on the condition that Hof, Turner, and Long cover controllers' leave requests. Reed testified that management worked for the other controllers each time a request was made but worked to cover his religious leave requests only twice.

Reed testified that his relationship with Hof deteriorated in the spring of 1995. On March 25, Hof accused Reed of violating procedures applicable to the familiarization travel program ("FAM"). Reed had used the FAM program to travel to California. When he was unable to obtain a seat on his originally scheduled return flight, he departed from a different airport on a different flight. Hof first reprimanded Reed for failing to inform management that he had switched flights. Reed testified that when Hof realized he had traveled on a Saturday the "meeting took a bad, bad turn, a real bad turn." Hof pounded the table, shouted, and swore. He asserted that Reed's religion was a "scam" and accused Reed of "scamming" the facility, the other controllers, and the FAA. After the meeting, Hof contacted Reed's minister to verify Reed's religious beliefs.

After the March incident, Reed was scheduled to work a series of six consecutive Saturdays in May and June 1995. Reed was unable to make alternative arrangements for five of those Saturdays and Hof refused to work for Reed on the five Saturdays.

On Saturday May 20, 1995, Reed called Turner and requested eight hours of annual leave. Turner denied the request due to "current and potential [air] traffic." Turner, however, testified that at the time Reed called, traffic was being handled by only one controller. Turner further testified that he left work early on

May 20 because traffic was so light. Reed did not report to work on May 20.

On May 27, 1995, Reed requested "spot" leave for two, one-hour periods. The controller in charge, Larry Halpern, granted Reed's request for one of the periods based on an "extremely light" level of traffic. When Hof learned that Reed's leave request had been granted, he ordered Halpern to turn the Pueblo facility's radar operations over to the Denver Air Route Traffic Control Center. Later that day, Hof ordered the airspace turned over to Denver Center for a second, one-hour period. Halpern testified that Hof's decision to turn the Pueblo airspace to Denver Center was unnecessary and "disruptive." Another controller on duty May 27, 1995, filed an unsatisfactory condition report regarding the incident and Hof later admitted that his actions were "disruptive to air traffic and could have compromised safety."

Reed was terminated on July 28, 1995, for failing to report to work on May 20, June 3, June 10, June 17, and June 24. Reed challenged his termination through the Merit Systems Protection Board ("MSPB") and initially received a favorable ruling from the administrative law judge. That ruling, however, was reversed and the matter remanded by the MSPB. *Reed v. Dep't of Transp.*, 76 M.S.P.R. 126 (1997). On remand, the administrative law judge ruled in favor of the FAA and Reed's termination became effective May 9, 1998.

Reed then filed a complaint in federal district court raising a retaliation

claim, two Title VII claims, and a Religious Freedom Restoration Act ("RFRA") claim. The case proceeded to trial. At the close of Reed's case and again at the close of all the evidence, the FAA filed a motion for judgment as a matter of law. *See* Fed. R. Civ. P. R. 50. The district court granted the motion as to Reed's RFRA claim and his retaliation claim but denied the motion as to the Title VII claims for failure to accommodate and intentional religious discrimination. The jury found that the FAA failed to accommodate Reed's religious beliefs and that the FAA intentionally discriminated against Reed based on his religious beliefs. The jury awarded Reed compensatory damages of $1.5 million and returned an advisory award of $248,356 in past economic damages and $508,088 in future economic damages. The district court adopted the advisory awards in its judgment.

After judgment was entered, the FAA filed a renewed motion for judgment as a matter of law and filed a separate motion to alter or amend the judgment. Reed filed a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure requesting prejudgment interest. The district court denied the FAA's motion for judgment as a matter of law, reduced Reed's compensatory damage award to $300,000, and decreased the front-pay award to $440,302. Finally, the district court denied Reed's motion for prejudgment interest, concluding only that the request should have been raised in a Rule 59(e) motion.

The matter is now before this court on the FAA's appeal from the denial of its motion for judgment as a matter of law, No. 02-1461, and Reed's cross-appeal from the denial of his motion for prejudgment interest, No. 02-1462.

**III. Discussion**

**A.     Appeal No. 02-1461**

*1.      Standard of Review*

This court "review[s] *de novo* the grant or denial of a judgment as a matter of law." *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 557 (10th Cir. 1996).  In the course of that review, we apply the same legal standard as the district court and construe the evidence in the light most favorable to the nonmoving party. *Id*. "Unless the proof is all one way or so overwhelmingly preponderant in favor of the movant as to permit no other rational conclusion, judgment as a matter of law is improper." *Id*. (citation omitted).

*2.      Reed's Intentional Discrimination Claim*

Title VII makes it "an unlawful employment practice for an employer . . . to discharge . . . any individual . . .  because of such individual's . . . religion. 42 U.S.C. § 2000e-2(a)(1).  The term "religion is defined to "include[] all aspects of religious observance and practice . . . unless an employer demonstrates that he is unable to reasonably accommodate to an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business."      *Id*.

-9-

§ 2000e(j). The FAA argues that the district court erred in denying its motion for judgment as a matter of law on Reed's intentional discrimination claim because Reed presented no evidence from which a jury could conclude that his termination resulted from religious discrimination. It is the FAA's position that Reed was terminated because he failed to report to work. We reject the FAA's argument because a reasonable jury could conclude that Reed's failure to report to work and, hence, his termination resulted from intentional discrimination.

Evidence presented at trial supports Reed's contention that Hof orchestrated the situation which led to Reed's absences and, ultimately, his termination. First, Hof converted the QATS position to a one-year, temporary assignment. Reed then was required to bid for his days off and the accommodation problem arose. Although Hof testified that he was motivated by a desire to give other controllers the "    opportunity at a career enhancing position," the jury was free to disregard his explanation. Hof then instructed the other controllers to re-bid their days off under the hypothetical assumption that Reed would be given every Friday and Saturday off. Reed testified that this created hostility and made it more difficult for him to convince other controllers to swap shifts with him. Hof then approved personnel actions that resulted in a staffing shortage at the Pueblo facility. Although the union agreed to the decrease in staffing, it was on the condition that Hof and the other members of management

-10-

agree to cover leave requests. Reed testified that Hof nevertheless refused to cover his Saturday shifts. There was also evidence that Hof refused to implement alternative staffing plans that would have alleviated most of the accommodation problem.

Other evidence in the record supports the jury's finding that Hof's actions were motivated by intentional discrimination. Reed testified that Hof quizzed him repeatedly about his religious beliefs and frequently asked him to work on Saturdays while he was in the QATS position. Further, at a meeting in March 1995, Hof referred to Reed's religion as a "scam" and a religion of convenience. Hof's actions on May 27, 1995, when he turned the Pueblo airspace over to Denver Central after learning that Reed had been granted spot leave, could be interpreted by a jury as an indication of his hostility toward Reed.

### 3. Conclusion

Construing the evidence and the inferences in the light most favorable to Reed, we conclude that the jury's finding of intentional religious discrimination was not unreasonable. Accordingly, it is unnecessary for us to address the verdict premised on the failure to accommodate claim and the FAA's argument that it reasonably accommodated Reed's religious beliefs. The district court order denying the FAA's motion for judgment as a matter of law is **affirmed**.

**B.      Appeal No. 02-1462**

*1.      Standard of Reveiw*

The grant or denial of an award of prejudgment interest is reviewed for abuse of discretion.  *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1286 (10th Cir. 2002).

*2.      Denial of Reed's Motion    Seeking Prejudgment Interest*

The Civil Rights Act of 1991 amended Title VII to allow for interest on awards against the government, including back pay awards.  42 U.S.C. § 2000e-16(d); *Edwards v. Lujan*, 40 F.3d 1152, 1154 n.1 (10th Cir. 1994).  Reed requested prejudgment interest in his amended complaint and his request was noted in the pretrial order.  During trial, he presented expert testimony on the issue of damages, including the calculation of back pay.  The judgment entered by the district court, however, did not contain an award of prejudgment interest. Reed then filed a motion pursuant to Rule 60(a) to alter or amend the judgment to include prejudgment interest.  The motion was denied solely because the district court concluded the issue should have been raised in a Rule 59(e) motion.  This court, however, has held that a request for prejudgment interest in a complaint is sufficient to raise the issue in district court.  *Macsenti v. Becker*, 237 F.3d 1223, 1245 (10th Cir. 2001) ("[D]efendant cites no authority, nor are we aware of any, which holds that a plaintiff *must* raise this issue by a Rule 59(e) motion in the

trial court rather than taking an appeal."); *McNickle v. Bankers Life & Cas. Co.*, 888 F.2d 678, 680-81 (10th Cir. 1989). The district court's decision to deny Reed's motion without considering the merits of his request for prejudgment interest amounts to a failure to exercise discretion which is an abuse of discretion. *McNickle*, 888 F.2d at 680. ("A clear example of an abuse of discretion is where the trial court fails even to consider either an applicable legal standard or the facts upon which the exercise of its discretionary judgment is based.").

*3. Conclusion*

The district court's order denying Reed's request for prejudgment interest is **reversed** and the matter **remanded** for further proceedings not inconsistent with this opinion.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge

-13-