FILED
United States Court of Appeals
Tenth Circuit

December 8, 2009

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

JAMES WOODS,

     Plaintiff-Appellant,

v.

THE BOEING COMPANY; SPIRIT
AEROSYSTEMS, INC.

     Defendants-Appellees,

and

THE ONEX CORPORATION,

     Defendant.

No.07-3358
District of Kansas
D.C. No. 2:06-CV-02280 - JAR

---

ORDER AND JUDGMENT[*]

---

Before **HARTZ, HOLLOWAY** and **ANDERSON**, Circuit Judges.

---

Plaintiff-appellant James Woods brought this civil action alleging age

discrimination in employment in violation of the Age Discrimination in Employment Act,

29 U.S.C. §§ 621-634.  Mr. Woods sued his former employer, defendant-appellee Boeing,

and a prospective employer who decided not to offer him a job, defendant-appellee Spirit.

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

The district court granted summary judgment to the defendants, and plaintiff appeals. Jurisdiction on appeal is granted by 28 U.S.C. § 1291.

**BACKGROUND**

In February 2005, Boeing announced an agreement to sell its Wichita aircraft plant. The purchaser in this asset sale was a newly formed company, Spirit. Spirit, having no employees of its own at the start, used Boeing managers to make recommendations for which Boeing employees Spirit would hire as it proceeded to take over and operate the same enterprise in the same location. Plaintiff was not selected for employment with the new company. That employment decision is the basis for this action.

Plaintiff Woods was a long-time employee of Boeing. His position with the company since he began in 1978 was loft tooling developer. The loft tooling unit used computer software to design patterns for making tools to be used to make aircraft parts. Since 1985, however, plaintiff had not been creating designs but had only been reviewing the work of others. In 1989, the group of loft tooling developers began using a computer program called CATIA. In 2003, they were using version 4 of this program. A newer version 5 had been introduced in late 2004 or early 2005 and was expected to be used when Spirit was to begin operating the enterprise in mid-2005.

Walt Galloway became supervisor over Mr. Woods in April 2003. In December 2003 he evaluated plaintiff's performance, apparently the last evaluation done before the

hiring process for Spirit began in February 2005. On this evaluation, plaintiff was rated as "met all expectations" in all categories. Categories included technical skills and knowledge, quality and productivity, and "people working together." In comments, Mr. Galloway noted that there had been few "escapements" from plaintiff's area. (Boeing used the term "escapements" for errors.) Mr. Galloway also wrote "you have performed well" and "keep up the good work." Of the five people in the loft tool developing group, plaintiff and two others were rated "met all expectations" in all categories, and the other two got slightly higher marks on at least some of the criteria.

The asset purchase deal was executed on February 22, 2005, and Spirit took over operations on June 16, 2005, which was the final date of employment with Boeing for all of the workers at the plant. By February 28, Boeing managers and human resources employees were beginning the task of reviewing all employees to make recommendations as to which employees should be offered positions with Spirit. After the immediate supervisor made recommendations, there were two levels of review before the final decision. However, in plaintiff's case the two levels of review resulted in no changes in Galloway's recommendations. There were no notes of those two reviews, nor was there evidence of any comments or questions about the recommendation not to hire plaintiff Woods.

Galloway's employees were reviewed on February 28 in a meeting that Galloway participated in by telephone. The process and selection criteria were explained first, and Galloway had a chance to ask questions. (There had been a previous meeting to educate

the managers about the selection process, but Galloway had been unable to attend.)

Galloway testified that he made his recommendations in this meeting immediately after having been told about the selection criteria. Of the five loft tooling developers under his supervision, Galloway recommended that three be hired; plaintiff of course was one of the two that Galloway recommended not be hired.

Notes taken at this meeting reflected these comments by Galloway about Woods:

NR [not recommended] – limited skills/low quality/ low productivity/ marginal teaming abilities

Galloway further explained his rating of plaintiff in his deposition and a declaration submitted to the district court in support of defendants' motion for summary judgment. Galloway said that plaintiff met the minimum qualifications for the position of loft tooling developer with Spirit but that "not having the ability or the proficiency to create the product, only to check it, was a limiting factor as far as limited skills go." Plaintiff had not used version 4 of the software to create the product, only to check it. "There is a big difference," Galloway said. With regard to the quality of plaintiff's work, Galloway referred to Woods's failure to detect several errors in products he had checked. Galloway said that the three employees that he had recommended for hire had been performing all of the duties of the position and were proficient with version 4 of the program and so more likely to adapt easily to version 5.

The Spirit takeover did not involve a reduction in force. Mr. Galloway testified, however, that he anticipated that there would be a decrease in the number of employees in

the tool lofting unit. Of the five employees that Galloway supervised in the tool lofting unit, plaintiff concedes that two had received higher performance reviews from Galloway than plaintiff had. The other two had received the same ratings as plaintiff when Galloway was reviewing their performance for Boeing. However, when Galloway rated the employees for Spirit, the youngest of these three, (age 42) was rated much higher than plaintiff Woods (age 55) or the third employee (age 49).

Galloway supervised other employees as well. In total, he supervised 24 employees at the time of this selection process. Only eleven of the 24 were 48 years old or older, but all seven of the employees who were not recommended for hire were 48 or older.

## ANALYSIS

Plaintiff does not claim to have produced direct evidence of age discrimination. Consequently, he has proceeded under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). On appeal, it is uncontested both that plaintiff had made a prima facie case of age discrimination and that defendants cited a neutral reason for the decision. Accordingly, the only issue on appeal is whether the plaintiff submitted sufficient evidence of pretext to defeat the motion for summary judgment.[1]

Our analysis is framed by familiar standards:

---

[1]A jury is permitted to draw an inference of illegal bias from a finding that the employer's justification is mere pretext. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000).

> We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party.

*English v. Colorado Dep't of Corrections*, 248 F.3d 1002, 1007 (10th Cir. 2001) (quoting *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999)).

Plaintiff contends that the district court's erroneous conclusion that he had not made a sufficient showing of pretext was based on four underlying errors. First, Mr. Woods says, the district court erred in rejecting his evidence that his prior performance reviews were inconsistent with the stated reasons for his rejection. Second, plaintiff asserts that it was error to reject his evidence of disparate treatment, which showed that a younger co-worker with similar performance had been treated more favorably. Third, plaintiff contends that the district judge failed to credit his evidence showing a pattern of discrimination: all of the persons supervised by Galloway who were not re-hired were at least 48 years old. And fourth, plaintiff argues that the district judge failed to consider the evidence of pretext in the aggregate and failed to consider all the evidence in the light most favorable to plaintiff.

At the time the hiring decision by Spirit was made, its stated reasons, as reflected in the notes of the meeting (and apparently based on input from Galloway only), were:

"limited skills/ low quality/ low productivity/ marginal teaming abilities."

Each of these reasons is contradicted by his last performance review, Woods asserts.

According to Mr. Galloway's prior evaluation, plaintiff met all expectations in "Quality and Productivity," "Technical Skills" and "Teamwork" – the same qualities that Galloway later deemed deficient. This court has several times held that a plaintiff can avoid summary judgment in just this way – by showing that an evaluation used to justify an unfavorable employment action conflicts with other assessments of the employee's performance. *See Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 563-64 (10th Cir. 1996); *Cole v. Ruidoso Munic. Schools*, 43 F.3d 1373, 1380 (10th Cir 1994); *Zuniga v. The Boeing Company*, 133 Fed. Appx. 570 (10th Cir. 2005) (unpublished).

Galloway and the defendants admit that plaintiff met the minimum qualifications for the position, which included making designs with the computer software. Plaintiff also testified to that effect. Like the earlier performance review, this was evidence from which a jury could find that the "limited skills" justification was a pretext.

In explaining his reference to plaintiff's "low quality" of work, Mr. Galloway in his deposition said that he was referring to "escapements" or errors. But Galloway had previously commended plaintiff for the low number of errors and in his deposition admitted that not all of the errors that had occurred were plaintiff's fault. The district court appears to have taken this evidence in the light most favorable to the defendants instead of in favor of the plaintiff, saying that a few errors does not mean no errors and doing so in the absence of any evidence that the other employees in the unit were not

-7-

responsible for any errors.

Galloway cited plaintiff's purported "marginal teaming abilities," but admitted that this was a completely subjective evaluation. This court has often said that use of subjective criteria, while not alone sufficient to show discrimination, is evidence that a jury may use to find pretext. *See, e.g., Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1218 (10th Cir. 2002) (collecting cases).

The disparate treatment of the three workers in plaintiff's group who had substantially similar previous evaluations is further evidence of pretext. Despite the fact that Galloway had previously given the three substantially similar ratings, in his recommendation to Spirit, Galloway rated the youngest of the three much higher than he had before, and of these three Galloway recommended only the youngest for retention by Spirit. Although the youngest worker had received slightly better ratings than plaintiff in two categories in the prior evaluation, his ratings in quality and productivity, skills, knowledge and teamwork were identical to those given plaintiff Woods. More importantly, Galloway admitted that the slightly higher marks in the prior evaluation of the youngest worker were not significant.

Similarly, the fact that every one of the employees that Galloway recommended against hiring were 48 or older is further evidence of disparate treatment of older workers. Three-fourths of those not retained were over 50. This court has held such evidence relevant and admissible. *See Greene*, 98 F.3d at 560-61.

The district court erred in rejecting this pretext evidence. Indeed, the disparity

-8-

between Galloway's earlier evaluation of plaintiff and the justifications later given by Galloway are alone sufficient to require a jury determination on pretext. Thus, in *Greene*, we held that it was sufficient for the employee to show that he had never been told about his alleged deficiencies and had been praised for his performance. 98 F.3d at 563-64. Of course, we express no opinion on the proper resolution of this fact question. A jury may find Mr. Galloway very sincere and his explanations cogent and persuasive. But it is a determination that only a jury may make.

In sum, we are persuaded that the summary judgment must be reversed and the case must be remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Entered for the Court


William J. Holloway, Jr.
Circuit Judge

No. 07-3358, <u>Woods v. The Boeing Co., et al.</u>

**ANDERSON**, Circuit Judge, concurring in part:

I concur in the judgment, and in part, but not all, of the reasoning supporting it. I write separately to make some observations about the burden of proof going forward, and problems with some of the inferences relied upon by the plaintiff/appellant, James Woods. The facts have already been amply set forth in the district court's careful opinion and in the majority opinion.

**A.**

This is an age-related disparate treatment claim of intentional discrimination in hiring in violation of the ADEA.[1] For summary judgment purposes the parties have proceeded on the premise that the evidentiary framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), applies and that the prima facie case requirements of that framework have been satisfied. Thus, as the majority opinion points out, we are left with only the question of "pretext" (the third <u>McDonnell</u> step) to determine whether a genuine issue of fact exists.

Both <u>McDonnell</u> and, separately, its subsidiary step of pretext are questionable in ADEA cases. In <u>Gross v. FBL Financial Services</u>, 129 S. Ct. 2343, 2349 n.2 (2009), the

---

[1]The Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 623(a)(l). The ADEA makes it unlawful for an employer "to fail or refuse to hire . . . any individual . . . because of such individual's age." <u>Id.</u>

Supreme Court noted earlier this year that it "has not definitively decided whether the evidentiary framework of <u>McDonnell Douglas v. Green</u> . . . utilized in Title VII cases is appropriate in the ADEA context" (citation omitted). And, in the equally recent case of <u>Paup v. Gear Products, Inc.</u>, 327 Fed. Appx. 100, 113, 2009 WL 1740512, at \*11 (10th Cir. June 19, 2009), a panel of this court, referring to the use of pretext as proof, noted that "some have criticized <u>McDonnell Douglas</u> as improperly diverting attention away from the real question posed by the ADEA—whether age discrimination actually took place—and substituting in its stead a proxy that only imperfectly tracks that inquiry." <u>Id.</u> (citing <u>Wells v. Colo. Dept. of Transp.</u>, 325 F.3d 1205, 1221-28 (10th Cir. 2003) (Hartz, J., concurring)); <u>MacDonald v. E. Wyo. Mental Health Ctr.</u>, 941 F.2d 1115, 1122-23 (10th Cir. 1991) (Seth, J., concurring)); <u>see generally</u> Timothy M. Tymkovich, <u>The Problem with Pretext</u>, 85 Denv. U. L. Rev. 503 (2008).

These considerations, though not binding here (<u>McDonnell</u> still applies in ADEA cases in this circuit), nevertheless lend more focus to the Court's holding in <u>Gross</u> which will shape the way this case proceeds and ultimately is presented with appropriate instructions to a jury.

First, <u>Gross</u> makes clear that mixed motive age discrimination claims and mixed motive jury instructions are never proper in an ADEA case. <u>Gross</u>, 129 S. Ct. at 2346. Further, it states that the burden of persuasion does not shift to the employer to prove that it would have made the same decision even if it had not taken age into account. Although the plaintiff here does not directly pursue a

-2-

mixed motive theory, some language appears intermittently in the record to suggest its presence. For example, in its opinion, the district court states at one point: "To prevail on his ADEA claim, plaintiff must establish that the challenged decision was motivated, at least in part, by age." D. Ct. Mem. and Order at 8.

In Gross, the Court went on to emphasize that it is the plaintiff's burden throughout an ADEA ease to prove that age was the "but for" cause of the employer's challenged action, stating:

> We hold that a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the "but-for" cause of the challenged adverse employment action. The burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision.

Gross, 129 S. Ct. at 2352.

While the majority opinion does acknowledge that the burden of persuasion remains with the plaintiff, the contours and strength of that proposition, especially at the point of considering pretext, have been reemphasized by the Court. It follows as a matter of logic, that the plaintiff here must persuade the jury that—all other things being equal except for age—Spirit would have hired him if he had been younger—say, 45.

The "but for" rule applies across the board to ADEA actions regardless of the theory upon which the plaintiff chooses to proceed: either proving discrimination directly, or by using the McDonnell Douglas burden-shifting framework, as Mr. Woods

has done here. Thus, Mr. Woods properly attempts to resist summary judgment by arguing that inferences exist here to support a conclusion that Spirit's proffered reasons for not hiring him are unworthy of belief. Beaird v. Seagate Tech, Inc., 145 F.3d 1159, 1165 (10th Cir. 1998).

However, if and when Mr. Woods gets to that point in a jury trial, the presumption of discrimination established by the prima facie showing "simply drops out of the picture," and the "analysis shifts to the plaintiff's ultimate burden of showing that the defendant discriminated on the illegal basis of age." Pippin v. Burlington Res. Oil & Gas Co., 440 F.3d 1186, 1193 (10th Cir. 2006) (quoting Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 143 (2000)); Furr v. Seagate Tech., Inc., 82 F.3d 980, 985 (10th Cir. 1996).[2] It is here that the "but for" burden of proof must rest directly on the plaintiff, and the jury be instructed accordingly. That is, it must find that the plaintiff has shown by a preponderance of the evidence that the plaintiff was not hired because of his age. Or, in other words, that age was the "but for" factor in the hiring decision.[3]

_____

[2]That does not mean to suggest that the pretext-plus regime pre-dating Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133 (2000), is resurrected. Rather, it at least serves to emphasize the qualifications of the applicant, and to focus on the plaintiff's burden of proof. The "plus" in pretext-plus refers to the quantum of evidence. The "but for" requirement refers to the ultimate fact of causation.

[3]Thus, for example, the non-mixed motives pattern jury instruction for the Seventh Circuit, even before Gross, provides generally as follows (as adapted to this case): Plaintiff claims that he was not hired by Defendant because of his age. To succeed on this claim, Plaintiff must prove by a preponderance of the evidence that he was not hired by Defendant because of his age. To determine that Plaintiff was not hired because of his age, you must decide that Defendant would have hired Plaintiff had he been younger but

(continued...)

-4-

**B.**

The majority opinion notes that "Galloway and the defendants admit that plaintiff met the minimum qualifications for the position, which included making designs with the computer software." Maj. Op. at 7. Minimum qualifications are relevant to making a prima facie case, but hiring decisions turn on much more. When, as here, a new owner spends a significant amount to acquire a business, it is a given that it expects to run a better and more profitable operation than the former owner. In pursuit of that goal, it is entitled and expected to look for and hire "the best of the best," so long as the plan is not to cull the work force of protected groups.

Mr. Woods worked with four others as a Loft Tooling Developer, which "involved using computer-aided design (CAD) software systems to create layouts that were used to aid in the fabrication of tools." Appellant's Br. at 5. But the parties agree that for 20 years Mr. Woods "had not been creating designs but had only been reviewing the work of others." Maj. Op. at 2. That is, he was a "checker." Mr. Galloway's 2003 performance evaluation of Mr. Woods complimented him on doing a good job as a checker. It could very well be that a person is selected to be a checker

---

[3](...continued)
everything else had been the same.

Seventh Circuit Jury Instruction 3.01, Hon. Leonard B. Sand, et al., MODERN FEDERAL JURY INSTRUCTIONS, Civil Pattern Instructions, at 7-65 (2008).

because of design talent, or the opposite, but the ability to check designs surely is different from the proficiency and experience derived from actually doing the creative design work itself, especially over a period of many years. In this respect I disagree with the majority opinion's reliance on comparisons of what amounts to ability to handle the basic mechanics of the functions in question (CAD), and both skill and depth of experience in design itself.

With respect to the position of checker, the record is not very clear whether Spirit's operation of the Loft Tooling Developer group (assuming that designation survived the asset purchase) involved five workers and whether the position of checker was continued or discontinued. Mr. Woods contends that "[t]his was not a reduction in force . . . ." Appellant's Reply Br. at 15 (a misnomer in any case since this was an arms-length asset purchase followed by hiring a new workforce). If that means that there were five positions to be filled, then there were two vacancies following the three Loft Tooling Developer hires. If the position of checker was eliminated, as Spirit suggests, then that may have some impact both on the prima facie case and the disparate treatment analysis.

## C.

The majority opinion did not place great weight on the statistical arguments advanced by Mr. Woods. I agree. As has been pointed out, statistical evidence supported by a proper foundation, can be relevant in some instances to create an inference of

-6-

discrimination.  However, in order to be probative of discrimination, statistical evidence

must "eliminate nondiscriminatory explanations for the disparity."  Fallis v. Kerr-McGee

Corp., 944 F.2d 743, 746 (10th Cir. 1991); see Pippin, 440 F.3d at 1198; Furr, 82 F.3d at

986-87.  As we said in Timmerman v. U.S. Bank, 483 F.3d 1106 (10th Cir. 2007):

> "Statistics taken in isolation are generally not probative of . . .
> discrimination," Jones v. Unisys Corp., 54 F.3d 624, 632 (10th Cir. 1995),
> and statistical evidence on its own "will rarely suffice" to show pretext.
> Ortiz v. Norton, 254 F.3d 889, 897 (10th Cir. 2001).  At the very least, in
> order to create an inference of pretext, "a plaintiff's statistical evidence
> must focus on eliminating nondiscriminatory explanations for the disparate
> treatment by showing disparate treatment between *comparable* individuals."
> Fallis, 944 F.2d at 746.

Id. at 1114-15.[4]

Mr. Woods derives percentages from pools of five, nineteen, twenty-four

(combining the five and the nineteen), and 370, with nothing but broad inferences to tie

them all together.  In the first place, I would eliminate the pool of five for percentage

---

[4]References are made by the plaintiff in this case and in cases cited by the majority
to an alleged "pattern" of failing to retain older employees, and to an alleged "disparate
impact" of Spirit's actions on older applicants.  It must be remembered that this is not a
pattern or practice case, nor is it a "disparate impact" case.  They proceed along very
different lines of proof and analytical framework.  See, e.g., Thompson v. The
Weyerhaeuser Co., 582 F.3d 1125 ( Cir. 2009); Thiessen v. General Electric Capital
Corp., 267 F.3d 1095, 1106 (10th Cir. 2001) ("Pattern-or-practice cases differ
significantly from the far more common cases involving one or more claims of
individualized discrimination.").  "Disparate impact theory permits challenges to facially
neutral employment policies or practices that have a disproportionately adverse effect on
a protected class."  8 Lex K. Larson, EMPLOYMENT DISCRIMINATION § 137.01 (2d ed.
2008).  See also Smith v. City of Jackson, Miss., 544 U.S. 228 (2005) (holding that
disparate impact claims do apply to the ADEA), overruling Ellis v. United Airlines, Inc.,
73 F.3d 999 (10th Cir. 1996).

purposes as being statistically meaningless, and I would question the combined pool of twenty-four on the same grounds. See, e.g., Pippin, 440 F.3d at 1198 (questioning the usefulness of a sample size of nineteen). The group of 370, over which Ricky Morriss was the director, is even more remote in relevance on multiple grounds. Additionally, reference to the age of 48 for creating a classification of those retained and not retained, is wholly arbitrary. If, for instance, there is no meaningful legal distinction between, say, ages 47 and 49, the classifications chosen by the plaintiff from the group of five would change for statistical purposes.

In any event, the proffered statistical evidence will have to clear a number of hurdles, among them, foundation and relevance, before becoming admissible as evidence at trial.

**CONCLUSION**

This is a very thin case. The majority is willing to send this case back for trial based solely on inferences raised by inconsistent performance evaluations given by Walt Galloway to the plaintiff fourteen months apart, and for different purposes. As indicated, I reluctantly go along with that, despite the fact that I have not found any cases where the evidence is that meager. The two cases upon which the majority primarily rely, Zuniga v. The Boeing Co., 133 Fed. Appx. 570 (10th Cir. 2005) (unpublished), and Greene v. Safeway Stores, Inc., 98 F.3d 554 (10th Cir. 1996), certainly had more to support a reversal than this case does. Both of those cases involved top-down plans to get rid of

-8-

older workers.  Here, there is no "top-down," as such—just middle- and lower-level managers from Boeing assisting Spirit in the process of hiring a new workforce.  The actors in <u>Zuniga</u> and <u>Greene</u> had an axe to grind.  It is hard to see in this case what axe, for example, Walt Galloway had to grind.  And, the record is devoid of any nexus by way of "conspiratorial" meetings or otherwise between Walt Galloway and others involved in this three-level hiring process.  Furthermore, it strains credulity to believe that these middle-level managers were focused on some nefarious plan which impacted upon the plaintiff here when managers and human resources personnel were working "round the clock" reviewing 8,000 Boeing employees for recommendations as to their possible employment with Spirit.[5]  Appellee's Br. at 23-24.

For the foregoing reasons, I concur in the judgment, subject to the qualifications and observations set forth above.

---

[5]Not much has been done in the briefs to describe the larger context of this transaction.

07-3358 - *Woods v. The Boeing Co., et al.*

**HARTZ**, Circuit Judge, concurring:

I concur in Judge Holloway's opinion. I also concur in Judge Anderson's concurrence except to the extent that it disagrees with Judge Holloway's opinion. But even where it disagrees, I believe that Judge Anderson's concurrence makes important observations worthy of consideration on remand.