ORDER AND JUDGMENT*
WILLIAM J. HOLLOWAY, JR., Circuit Judge.
Plaintiff-appellant James Woods brought this civil action alleging age discrimination in employment in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634. Mr. Woods sued his former employer, defendant-appellee Boeing, and a prospective employer who decided not to offer him a job, defendant-appellee Spirit. The district court granted summary judgment to the defendants, and plaintiff appeals. Jurisdiction on appeal is granted by 28 U.S.C. § 1291.
BACKGROUND
In February 2005, Boeing announced an agreement to sell its Wichita aircraft plant. The purchaser in this asset sale was a newly formed company, Spirit. Spirit, having no employees of its own at the start, used Boeing managers to make recommendations for which Boeing employees Spirit would hire as it proceeded to take over and operate the same enterprise in the same location. Plaintiff was not selected for employment with the new company. That employment decision is the basis for this action.
Plaintiff Woods was a long-time employee of Boeing. His position with the company since he began in 1978 was loft tooling developer. The loft tooling unit used computer software to design patterns for making tools to be used to make aircraft parts. Since 1985, however, plaintiff had not been creating designs but had only been reviewing the work of others. In 1989, the group of loft tooling developers began using a computer program called CATIA. In 2003, they were using version 4 of this program. A newer version 5 had been introduced in late 2004 or early 2005 and was expected to be used when Spirit was to begin operating the enterprise in mid-2005.
Walt Galloway became supervisor over Mr. Woods in April 2003. In December 2003 he evaluated plaintiffs performance, apparently the last evaluation done before *208 the hiring process for Spirit began in February 2005. On this evaluation, plaintiff was rated as “met all expectations” in all categories. Categories included technical skills and knowledge, quality and productivity, and “people working together.” In comments, Mr. Galloway noted that there had been few “escapements” from plaintiffs area. (Boeing used the term “escapements” for errors.) Mr. Galloway also wrote “you have performed well” and “keep up the good work.” Of the five people in the loft tool developing group, plaintiff and two others were rated “met all expectations” in all categories, and the other two got slightly higher marks on at least some of the criteria.
The asset purchase deal was executed on February 22, 2005, and Spirit took over operations on June 16, 2005, which was the final date of employment with Boeing for all of the workers at the plant. By February 28, Boeing managers and human resources employees were beginning the task of reviewing all employees to make recommendations as to which employees should be offered positions with Spirit. After the immediate supervisor made recommendations, there were two levels of review before the final decision. However, in plaintiffs case the two levels of review resulted in no changes in Galloway’s recommendations. There were no notes of those two reviews, nor was there evidence of any comments or questions about the recommendation not to hire plaintiff Woods.
Galloway’s employees were reviewed on February 28 in a meeting that Galloway participated in by telephone. The process and selection criteria were explained first, and Galloway had a chance to ask questions. (There had been a previous meeting to educate the managers about the selection process, but Galloway had been unable to attend.) Galloway testified that he made his recommendations in this meeting immediately after having been told about the selection criteria. Of the five loft tooling developers under his supervision, Galloway recommended that three be hired; plaintiff of course was one of the two that Galloway recommended not be hired.
Notes taken at this meeting reflected these comments by Galloway about Woods:
NR [not recommended]—limited skills/ low quality/ low productivity/ marginal teaming abilities
Galloway further explained his rating of plaintiff in his deposition and a declaration submitted to the district court in support of defendants’ motion for summary judgment. Galloway said that plaintiff met the minimum qualifications for the position of loft tooling developer with Spirit but that “not having the ability or the proficiency to create the product, only to check it, was a limiting factor as far as limited skills go.” Plaintiff had not used version 4 of the software to create the product, only to check it. “There is a big difference,” Galloway said. With regard to the quality of plaintiffs work, Galloway referred to Woods’s failure to detect several errors in products he had checked. Galloway said that the three employees that he had recommended for hire had been performing all of the duties of the position and were proficient with version 4 of the program and so more likely to adapt easily to version 5.
The Spirit takeover did not involve a reduction in force. Mr. Galloway testified, however, that he anticipated that there would be a decrease in the number of employees in the tool lofting unit. Of the five employees that Galloway supervised in the tool lofting unit, plaintiff concedes that two had received higher performance reviews from Galloway than plaintiff had. The other two had received the same rat *209 ings as plaintiff when Galloway was reviewing then- performance for Boeing. However, when Galloway rated the employees for Spirit, the youngest of these three, (age 42) was rated much higher than plaintiff Woods (age 55) or the third employee (age 49).
Galloway supervised other employees as well. In total, he supervised 24 employees at the time of this selection process. Only eleven of the 24 were 48 years old or older, but all seven of the employees who were not recommended for hire were 48 or older.
ANALYSIS
Plaintiff does not claim to have produced direct evidence of age discrimination. Consequently, he has proceeded under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). On appeal, it is uncontested both that plaintiff had made a prima facie case of age discrimination and that defendants cited a neutral reason for the decision. Accordingly, the only issue on appeal is whether the plaintiff submitted sufficient evidence of pretext to defeat the motion for summary judgment.[1]
Our analysis is framed by familiar standards:
We review the district court’s grant of summary judgment de novo, applying the same legal standard used by the district court. Summary judgment is appropriate “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Fed. R.Civ.P. 56(c). When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party.
English v. Colorado Dep’t of Corrections, 248 F.3d 1002, 1007 (10th Cir.2001) (quoting Simms v. Oklahoma ex rel. Dep’t of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir.1999)).
Plaintiff contends that the district court’s erroneous conclusion that he had not made a sufficient showing of pretext was based on four underlying errors. First, Mr. Woods says, the district court erred in rejecting his evidence that his prior performance reviews were inconsistent with the stated reasons for his rejection. Second, plaintiff asserts that it was error to reject his evidence of disparate treatment, which showed that a younger co-worker with similar performance had been treated more favorably. Third, plaintiff contends that the district judge failed to credit his evidence showing a pattern of discrimination: all of the persons supervised by Galloway who were not re-hired were at least 48 years old. And fourth, plaintiff argues that the district judge failed to consider the evidence of pretext in the aggregate and failed to consider all the evidence in the light most favorable to plaintiff.
At the time the hiring decision by Spirit was made, its stated reasons, as reflected in the notes of the meeting (and apparently based on input from Galloway only), were:
“limited skills/ low quality/ low productivity/ marginal teaming abilities.”
*210 Each of these reasons is contradicted by his last performance review, Woods asserts. According to Mr. Galloway’s prior evaluation, plaintiff met all expectations in “Quality and Productivity,” “Technical Skills” and “Teamwork”—the same qualities that Galloway later deemed deficient. This court has several times held that a plaintiff can avoid summary judgment in just this way—by showing that an evaluation used to justify an unfavorable employment action conflicts with other assessments of the employee’s performance. See Greene v. Safeway Stores, Inc., 98 F.3d 554, 563-64 (10th Cir.1996); Cole v. Ruidoso Munic. Schools, 43 F.3d 1373, 1380 (10th Cir.1994); Zuniga v. The Boeing Company, 133 Fed.Appx. 570 (10th Cir.2005) (unpublished).
Galloway and the defendants admit that plaintiff met the minimum qualifications for the position, which included making designs with the computer software. Plaintiff also testified to that effect. Like the earlier performance review, this was evidence from which a jury could find that the “limited skills” justification was a pretext.
In explaining his reference to plaintiffs “low quality” of work, Mr. Galloway in his deposition said that he was referring to “escapements” or errors. But Galloway had previously commended plaintiff for the low number of errors and in his deposition admitted that not all of the errors that had occurred were plaintiffs fault. The district court appears to have taken this evidence in the light most favorable to the defendants instead of in favor of the plaintiff, saying that a few errors does not mean no errors and doing so in the absence of any evidence that the other employees in the unit were not responsible for any errors.
Galloway cited plaintiffs purported “marginal teaming abilities,” but admitted that this was a completely subjective evaluation. This court has often said that use of subjective criteria, while not alone sufficient to show discrimination, is evidence that a jury may use to find pretext. See, e.g., Garrett v. Hewlett-Packard Co., 305 F.3d 1210, 1218 (10th Cir.2002) (collecting cases).
The disparate treatment of the three workers in plaintiffs group who had substantially similar previous evaluations is further evidence of pretext. Despite the fact that Galloway had previously given the three substantially similar ratings, in his recommendation to Spirit, Galloway rated the youngest of the three much higher than he had before, and of these three Galloway recommended only the youngest for retention by Spirit. Although the youngest worker had received slightly better ratings than plaintiff in two categories in the prior evaluation, his ratings in quality and productivity, skills, knowledge and teamwork were identical to those given plaintiff Woods. More importantly, Galloway admitted that the slightly higher marks in the prior evaluation of the youngest worker were not significant.
Similarly, the fact that every one of the employees that Galloway recommended against hiring were 48 or older is further evidence of disparate treatment of older workers. Three-fourths of those not retained were over 50. This court has held such evidence relevant and admissible. See Greene, 98 F.3d at 560-61.
The district court erred in rejecting this pretext evidence. Indeed, the disparity between Galloway’s earlier evaluation of plaintiff and the justifications later given by Galloway are alone sufficient to require a jury determination on pretext. Thus, in Greene, we held that it was sufficient for the employee to show that he had never been told about his alleged deficiencies and had been praised for his performance. 98 *211 F.3d at 563-64. Of course, we express no opinion on the proper resolution of this fact question. A jury may find Mr. Galloway very sincere and his explanations cogent and persuasive. But it is a determination that only a jury may make.
In sum, we are persuaded that the summary judgment must be reversed and the case must be remanded for further proceedings consistent with this opinion.
IT IS SO ORDERED.

 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R.App. P. 32.1 and 10th Cir. R. 32.1.

. A jury is permitted to draw an inference of illegal bias from a finding that the employer's justification is mere pretext. Reeves v. Scinderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).